# Kayley v. McCourt, Appellant.

*Beneficial associations—Subordinate division—Property rights—Dissolution of lodge—Withdrawal to another association.*

The majority of the members of a subordinate division of a beneficial association have no power to carry the division and its property over to another society with which it has sustained no relations whatever, against the will of the minority.

Gorman v. O'Connor, 155 Pa. 239 and State Counc. Jr. Order of United Am. Mechanics of Pa. v. Emery, 219 Pa. 461, distinguished and explained.

Argued Jan. 11, 1912. Appeal, No. 199, Jan. T., 1911, by defendants from decree of C. P. No. 3, Phila. Co., Sept. T., 1909, No. 773, on bill in equity in case of Henry Kayley, President, Patrick Dugan, Treasurer, on behalf of themselves and the other Officers and Members of Division No. 3 of the Ancient Order of Hibernians v. Anthony McCourt et al., Officers and Members of an Alleged Division No. 3, Ancient Order of Hibernians, Beneficial Savings Fund Society and The Sterling Building and Loan Association. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

FERGUSON, J., found the facts and law as follows:

### FINDINGS OF FACTS.

1. The Ancient Order of Hibernians is a beneficial order duly incorporated under the laws of the State of Pennsylvania.

2. Division No. 3, of the Ancient Order of Hibernians, a subordinate branch or division of the incorporated body, was organized by the authority of the main body in the year 1872.

3. From the year 1872 the said Division No. 3 has been known and recognized by the parent or main body and at the time of the filing of the bill in this case there had accumulated from dues, fines, etc., contributed by its members, the sum of $1066, then on deposit in the Beneficial Savings Fund Society, and the additional sum of $468 in the Sterling Building & Loan Association, represented by shares of stock. The sum on deposit and the shares of stock were in the name of the Division No. 3, Ancient Order of Hibernians, and by the rules of the division could be withdrawn only upon resolution of the division authorizing the president or secretary so to do.

4. The purpose for which the Ancient Order of Hibernians was organized as expressed in its Constitution and By-Laws was: "To promote friendship, unity and Christian charity among its members by raising and supporting a fund of money for maintaining the aged, sick, blind and infirm members; for the payment of funeral benefits; for the advancement of the principles of Irish nationality; for the legitimate expenses of the order and for no other purpose whatsoever."

5. In July, 1909, the membership of Division No. 3, Ancient Order of Hibernians, numbered about one hundred and seventeen.

6. On July 11, 1909, the regular stated meeting was held at St. Michael's Hall, Germantown avenue and Jefferson street, Philadelphia. About thirty-eight members were present. The then president, Anthony McCourt, one of the defendants, presided. Thomas Cassidy, the then recording secretary; Joseph McGuckin, the then vice-president; Joseph Woods, the then financial secretary, and Michael McNamee, Jr., the then acting treasurer, were present.

7. At the meeting a resolution was offered by a member named Burns, to the effect that the division sever its connection with the Ancient Order of Hibernians in America and affiliate with the Ancient Order of Hibernians, Board of Erin in Ireland. The motion was debated and the minutes show that the motion was carried unanimously. In point of fact, the motion was not carried unanimously, for Henry Kayley, one of the complainants, voted in the negative. There had been offered previously a motion condemning certain conduct on the part of the national president, which was adopted by a vote of 31 to 7, and although the vote on the motion to secede was called for and one man voted in the negative, the actual count of the vote was not announced. After further business the meeting adjourned.

8. On August 8, 1909, another meeting was held, 40 to 45 members being present, at which time a dispute arose over the approval of the minutes of the meeting of July 11th. The minutes of the August meeting show that Kayley moved to lay the minutes on the table, which was lost by a vote of one to twenty-nine. In point of fact, the actual motion that was put was this: "All those in favor of reading the minutes to suit Kayley" which was apparently voted down. There was much confusion, in the course of which Kayley was fined. Subsequently a motion was passed to adjourn the meeting sine die, after which the president requested all present to take the obligation as members of the Board of Erin.

9. After the meeting adjourned as a division of the Ancient Order of Hibernians in America, the president and most of those present adjourned to an ante-room and organized as a division of the Board of Erin. Kayley, on behalf of himself and several other members who refused to leave the room, demanded the money, books and papers of the organization which were refused.

10. At the time of the meetings in July and August, 1909, Kayley was a member and in good standing.

11. On August 21, 1909, Kayley and thirteen other members who declined to join the division as a member of the Board of Erin, reorganized by the election of the following officers: President, Henry Kayley; Vice-President, James Bigley; Recording Secretary, Thomas Brosman; Financial Secretary, Hugh Doyle; Treasurer, Patrick Dugan; Stewards, Patrick Hughes, Michael Daley; Trustees, Thomas Murphy, James Davis and John Carroll. The division as thus reorganized was recognized by the State President of the Ancient Order of Hibernians in America as Division No. 3 of the order.

12. The Board of Erin is an organization having its original foundation in Great Britain and Ireland, with some divisions in America. It has no organic connection with the Ancient Order of Hibernians in America, but a system of comity and fraternity has for years existed between the two orders, as a result of which members sometimes were enabled to transfer their allegiance from one body to the other without the formality required of new members not affiliated with either body, but this facility of securing entrance to membership was not obligatory, but was optional with the members of the different divisions.

From these facts the following conclusions of law are made:

CONCLUSIONS OF LAW.

1. The majority of the members of the Division No. 3, Ancient Order of Hibernians in America, were without power to remove the organization bodily from one order into another without the unanimous consent of the members. From the facts as found it follows that when a majority of the members present at the meetings in July and August, 1909, decided to secede and to join the Board of Erin their act was the act of individuals and not of the division itself.

2. The members of the Division No. 3 who refused to secede and who perfected an organization after the

secession, which was recognized by the State body, continued and maintained the existence of the division.

3. The act of secession was not an act of dissolution of Division No. 3, but was a voluntary withdrawal from its membership. These members who remained and preserved the organization are entitled to the possession of the books, papers and other property of the organization and the seceding members are entitled to no part or portion thereof.

4. An injunction should issue restraining the defendants from withdrawing or transferring or in any wise interfering with the funds of the division now on deposit in the Beneficial Savings Fund Society or to its credit in the Sterling Building and Loan Association.

5. That an injunction should issue restraining the Beneficial Savings Fund Society and the Sterling Building and Loan Association from paying any of the funds in their hands to the credit of Division No. 3, Ancient Order of Hibernians in America, to the defendants, or to any one else other than the properly constituted and authorized officers of Division No. 3, Ancient Order of Hibernians in America, as represented by the complainants herein.

*Error assigned* was decree awarding injunction.

*E. Spencer Miller,* for appellants.—This case is ruled by State Council J. O. U. A. M. of Pa. v. Emery, 219 Pa. 461.

*Frank Rogers Donahue,* for appellees.—The proceedings at the July and August meetings were, insofar as they affect the funds and assets of the organization, and the rights of the non-seceding members, illegal and void: Gorman v. O'Connor, 155 Pa. 239; Sutter v. First Dutch Reformed Church, 42 Pa. 511; Manning v. Shoemaker, 7 Pa. Super. Ct. 375; Bose v. Christ, 193 Pa. 13; Garrett v. Nace, 5 Pa. Super. Ct. 475; McFadden v. Murphy, 149 Mass. 341 (21 N. E. Repr. 868).

OPINION BY MR. JUSTICE STEWART, March 18, 1912:

This appeal raises no question that was not distinctly ruled in Gorman v. O'Connor, 155 Pa. 239. We do not understand from the argument of the learned counsel for appellant that he entertains any different view. His reliance is upon the later case of State Council Jr. Order United Am. Mechanics of Pa. v. Emery, 219 Pa. 461, which he regards as irreconcilable with that of Gorman v. O'Connor; and his contention is that the later case is to be taken as the controlling authority rather than the earlier. We meet and dispose of the only issue therefore when we settle the question of conflict between the two cases. A brief statement of the facts in each will show how widely dissimilar they are, both with respect to their facts and the questions of law involved. The earlier case presents little to distinguish it from the present one. There, as here, a majority of the members of a subordinate division of this same order, acting under the supposed authority of a resolution which had been adopted by a majority vote, undertook to carry the division and its property over to another society with which it had sustained no relations whatever, against the will of a minority, who, adhering to the original order, at once reorganized the division, and re-established it in its relations with the original order. Two contending divisions resulted, each claiming title to the property that had been acquired before the separation. The court held that neither the majority vote, nor the withdrawal of the majority and their uniting with a division of another body, nor both together, had worked a dissolution of the original division, or divested it of any of its rights or powers; but upon the re-organization by those of the minority, immediate resumption of all its functions followed. The governing consideration upon which the determination rested, was the continued existence of the division from which the majority had separated. This fixed its legal status as the rightful owner of the

property. In the latter case of State Council Jr. Order United Am. Mechanics of Pa. v. Emery, the State Council of the society, in the exercise of proper authority, revoked and annulled the charter of a subordinate council. This of necessity dissolved the subordinate council, and it at once ceased to exist. The controversy that arose was between the State Council and the persons who had composed the subordinate council, with respect to the moneys which had been collected and had been held by the subordinate council during its existence as a sick and beneficial benefit fund. The subordinate council having ceased to exist, the individuals who, as members of the subordinate council, had contributed the fund, denied the right of the State Council to any part of it or to the control, contending that notwithstanding the dissolution of the council the funds should still be appropriated to the uses for which it had been set apart, that is to say, for the benefit of the sick and families of the dead of those who were members; and the court sustained their contention. To state briefly the distinction between the two cases: Gorman v. O'Connor decides that under the facts of that case there had been no dissolution of division No. 3, but that the division remained in proper exercise of its rights and functions, and consequently that no one was in position to dispute its right to possession and control of its own property. State Counc. Jr. Order United Am. Mechanics of Pa. v. Emery decided that a fund collected by an existing council through voluntary contribution for a specific charitable use, in relief of its own members, was in the nature of a trust fund, and could not be appropriated by State Council upon the dissolution of the subordinate council, but that it remained for the benefit of those for whose relief it was donated. The cases are wholly unalike; indeed, so far apart removed from each other that conflict is impossible. Each is authority for what it decides. The opinion in the later case affords no

suggestion that any possible conflict with the earlier was in the mind of the court; and certainly there is none. The contention that the earlier case allowed a diversion of the assets of the society has nothing to support it. The fund there accumulated remained to be employed under the laws and regulations of the society in relief of its members. If in that case some of those who contributed were denied all benefit of the fund accumulated, it was in consequence of their voluntary withdrawal from the society. Ceasing to be members, they had no right to participate.

The assignments of error are overruled, and the decree is affirmed.