# Schriner, et al., *v.* Sachs, et al., Appellant.

*Beneficial associations — Supreme and subordinate councils — Withdrawal of majority—Right of minority—Equity—Injunction.*

In a suit in equity brought by a minority of the members of a subordinate council of a beneficial association to compel the surrender of certain assets of the subordinate council which had been appropriated by the majority, it appeared that the parent body had been incorporated in New Jersey and had surrendered its charter and had subsequently obtained a charter in Pennsylvania; that after the surrender of the New Jersey charter and before the completion of the Pennsylvania incorporation, a majority of the members of the subordinate council had withdrawn from the parent body taking with them the assets of the council and affiliated themselves with another body. The lower court decided that the surrender of the New Jersey charter did not warrant the dissolution of the order to such an extent as to authorize the diversion of

the property and assets of subordinate bodies to purposes other than those authorized by the rules and regulations of the parent body, and awarded the relief prayed for. *Held,* no error.

Argued March 27, 1916. Appeal, No. 79, Jan. T., 1916, by defendants, from decree of C. P. No. 4, Philadelphia Co., June T., 1915, No. 4782, requiring defendants to turn over to plaintiffs certain money and property, in case of Howard M. Schriner, Thomas Chriswell, John W. Creamer, Sr., Charles Ulmer, Theodore O. Dost, Frederick Steger, Charles Pfautz, Henry T. Wilt, Joseph Dean and Joseph A. Wilt, on Behalf of Themselves and the Other Officers, Trustees and Members of Quaker City Circle, No. 97, Brotherhood of America of the State of Pennsylvania, v. John Sachs, Sr., Levi Myers, Michael Ryan, Henry Demberger, William Kaelberger, William Reimenschneider, Harry Ruehman, John Pretz and John Sachs, Jr., Officers, Trustees and Members of Quaker City Circle, No. 97, Brotherhood of America of Philadelphia, County of Philadelphia, of the State of Pennsylvania, as Representing Themselves and All Others Having the Same Interest. Before BROWN, C. J. MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for a mandatory injunction. Before CARR, J.

The opinion of the Supreme Court states the facts.

The court decreed that defendants should turn over to plaintiffs the property, effects and cash now in their possession, which was the property of Quaker City Circle, No. 97, Brotherhood of America, of the State of Pennsylvania. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law of the hearing judge and the decree of the court.

*Chester N. Farr, Jr.,* for appellants, cited: State Council Junior Order United American Mechanics of

Penna. v. Emery, 219 Pa. 461; Wolfe v. Limestone Council No. 373, 233 Pa. 357; English Presbyterian Congregation Trustees v. Johnson, 1 W. & S. 9; Commonwealth, ex rel., v. Heilman, 241 Pa. 374.

*Frank M. Cody*, for appellees.—The appellants had the right to join the New Jersey order if they so desired, but they could not, against the will of the minority, carry over the property to another association: Kayley v. McCourt, 235 Pa. 304; Gorman v. O'Connor, 155 Pa. 239; Carlin v. Ancient Order of Hibernians, 54 Pa. Superior Ct. 512; St. Casimier Beneficial Society v. Novakowski, et al., 50 Pitts. L. J. 333; Washington, et al., v. White, et al., 44 Pitts. L. J. 338.

The constitution and laws of the Supreme Circles bind all the circles from the highest to the lowest: Derry Council, No. 40, Jr. Order United American Mechanics of Hummelstown, Pa., v. State Council of Penna., Jr. Order United American Mechanics, et al., 197 Pa. 413; Com., ex rel., v. Heilman, 241 Pa. 374; Carlin v. Ancient Order of Hibernians, 54 Pa. Superior Ct. 512.

The incorporation of the Supreme Circle in Pennsylvania did not make it independent to the order, but simply gave corporate form to a society already in existence for the purpose of better promoting the principles of the order: Commonwealth, ex rel., v. Heilman, 241 Pa. 374; State Council Junior Order of United American Mechanics of Penna. v. Emery, 219 Pa. 461; Wolfe v. Limestone Council, No. 373, 233 Pa. 357.

OPINION BY MR. JUSTICE FRAZER, May 15, 1916:

The Brotherhood of America is a secret beneficial society having members in Pennsylvania, New Jersey and other states. The head of the organization is the Supreme Circle composed of certain officers and representatives of subordinate bodies located in the various states. Under the state divisions are Grand Circles and Grand Homes and Subordinate Circles and Homes.

These various organizations are bound together under a general system for the government of the society and the transaction of its business, the Supreme Circle being the approved "Foundation Head" with power to grant charters to subordinate bodies and to enforce obedience to the laws of the order.

The society was organized in 1847 and has been in continuous existence since that time. The National Supreme Circle was instituted in 1850, and the Grand Circle of Pennsylvania in 1866. The Supreme Circle was originally unincorporated and remained so until 1896, when it became a chartered body under the laws of the State of New Jersey. Owing to unfavorable provisions contained in the laws of that state relating to corporations of this class with respect to the construction of contracts between the societies and their members, in 1914, on advice of counsel, the New Jersey charter was surrendered, and a new one applied for and obtained under the laws of the State of Pennsylvania.

The cause leading up to the dissolution and surrender of the New Jersey charter was a general dissension which arose among the members owing to an increased assessment on members in the death beneficial fund. Although the rates were of a sufficient amount originally to create a large reserve fund at a time when membership was young and deaths few, they proved to be inadequate at a later period when the death claims began to exceed the receipts, and as a result of this situation the early depletion of the reserve fund became apparent. To meet this condition the Supreme Circle, at its meeting in October, 1909, increased the death fund rates, thereby incurring the opposition of many members. At the time the new rates were scheduled to take effect certain of the dissatisfied members filed a bill in the New Jersey courts to restrain the order from proceeding to collect the increased assessments, alleging the dues fixed by the by-laws, at the time they became members of the order, constituted a contract between themselves and the order

which could not be changed without their consent. This view was sustained by the New Jersey courts, and foreseeing insolvency the organization decided to surrender its charter and secure a new one in another state, which was accordingly done. In the meantime, during the intervening period between the surrender of the New Jersey charter and procuring incorporation under the laws of Pennsylvania, the business of the organization was transacted in the usual manner. In October, 1914, a number of the New Jersey members of the order seceded and formed an independent organization under the name of the Brotherhood of America of New Jersey. Following this action many circles of the brotherhood transferred their allegiance to, and became part of the new organization. Among those seceding were a majority of the members of Quaker City Circle, No. 97, a subordinate circle in Pennsylvania, under the jurisdiction of its Grand Circle; these members at a meeting of the circle, by a resolution adopted January 27,.1915, by a vote of a majority of the members, decided to sever and terminate the circle's relations with the original order and accept a charter from the new Brotherhood of New Jersey.

Plaintiffs, constituting the minority, remained loyal to the original order, preserved their organization, elected officers and were recognized as Quaker City Circle, No. 97, by the Supreme Circle, which had previous to this time procured a charter from the State of Pennsylvania. The dissenting majority, however, on January 27, 1915, took with them all paraphernalia and assets of the order, the latter of the value of $1,619.52. The present bill was filed by the minority members to compel the surrender of this property. The lower court granted the prayers of the bill, and, upon exceptions filed thereto being dismissed, the present appeal was taken.

Appellants' contention is that at the time of the surrender of the charter of the Supreme Circle of New Jersey there was a total dissolution of the order, and that the order was not revived by the subsequent receipt

of a charter from the State of Pennsylvania, consequently the various state organizations were left without a head and became independent and free to act as a majority of the members might determine. If this be true, then the act of a majority of the Quaker City Circle, No. 97, was valid and binding upon the minority. With this contention, however, we cannot agree for the reason that the Supreme Circle, under its constitution, represented the supreme power of the entire order and its laws were binding upon all state and subordinate bodies and their members. Its business was transacted for many years without a state charter, and the mere fact of obtaining a charter did not affect its relation with the subordinate bodies, unless the regulations of the order conflicted with the laws of New Jersey governing such corporations. The order remained governed by its laws and regulations. The act of incorporation merely gave corporate form to an organization already existing; and as was said in Commonwealth, ex rel., v. Heilman, 241 Pa. 374, 390, the mere fact of procuring a charter "did not create a new society nor was it the foundation of a new organization. It simply gave corporate form to an unincorporated branch of a society already in existence. It was not intended to create a new society with a purpose different from that of the old order, but, on the other hand, the manifest intention was to preserve the old order, and to make the incorporated branch an integral part of it." Consequently, the voluntary surrender of its New Jersey charter did not operate as an extinguishment of the organization, or an annulment of its constitution and laws in absence of a clearly expressed intent. If, for any reason, the society found itself inconvenienced or hampered in its operation under the New Jersey charter, there is no valid reason why the organization could not voluntarily surrender the charter, and either continue to exist in the same manner as before becoming incorporated, or apply for a charter in a state whose laws are more favorable to organizations of the secret beneficial

class.  The circumstances attending and leading up to
the change, and the undisputed facts in the case, show
no intent on the part of the order to abandon its con-
tinued existence as an organization.  The question of
advisability of making the change was one of policy to
be decided by the organization itself, and with which the
courts are not concerned.  If deemed for the benefit of
the organization as a whole to substitute a Pennsylvania
charter for the New Jersey incorporation, we know of no
reason why this could not be done, so long as contractual
rights, or privileges, of individual members, under the
laws of the order, were not violated.  The Pennsylvania
organization continued as the supreme circle and the
act of the minority of Quaker City Circle No. 97 in de-
claring their allegiance to the parent body constituted
them the legal continuation of that subordinate organi-
zation, and the members who seceded, although a ma-
jority, had no right to carry away the property of the so-
ciety into another organization against the will of the
minority: Kayley v. McCourt, 235 Pa. 304.

The cases of State Council Junior Order of United
American Mechanics of Penna. v Emery, 219 Pa. 461,
and Wolfe v. Limestone Council No. 373, 233 Pa. 357, re-
lied upon by appellants, are not binding authorities un-
der the facts of this case.  These cases merely decide
that a state council, after revoking the charter of a sub-
ordinate council, is not entitled to funds contributed by
members of the subordinate council for sick and funeral
benefits, or property belonging to it and contributed by
its members previous to the revocation of its charter.
These cases were not intended to overrule the principles
of law announced in the earlier decisions of this State to
the effect that members of a subordinate division of an
association cannot, against the will of the minority,
transfer its property and assets to another association,
and thus divert it from the purpose originally intended. .
In the cases above cited the subordinate organization,
upon revocation of its charter, by the superior body,

ceased to exist as a member of the entire organization, and its property and assets accordingly became subject to the disposition and control of its members, or a majority thereof. In the present case there was no revocation of the charter of the subordinate organization; it continued as such, subject to the rules and regulations of the supreme council, and the minority members are entirely within their rights in insisting upon the property of the circle being held and applied for the purpose of its organization, notwithstanding the desire of the majority to convert and transfer it to another order. The distinction between the two lines of cases is pointed out in Kayley v. McCourt, supra.

The right of the majority, or any part of the members of the organization, to leave and form an independent association, cannot be disputed so long as they make no attempt by virtue of their new organization to interfere with the property rights of the members of the old order, and any fund created by the new organization must therefore remain its property, free from claims of the members of the former organization to which they belonged. The plaintiffs, therefore, are entitled to only such funds or property as belonged to the Quaker City Circle, No. 97, at the date of the withdrawal of the majority members from the organization.

The assignments of error are unduly multiplied in this case, there being seventy-two, a large number of them embracing exceptions of appellants to the adjudications of the lower court; while it is asserted these exceptions were dismissed the action of the court in dismissing them is not quoted. The assignments to the decree, however, raise the main questions involved, and are disposed of in this opinion.

The decree of the lower court is affirmed but modified and limited to the property and cash on hand as of January 27, 1915, amounting to $1,619.52.