## Grand Castle, Knights of Golden Eagle, v. Taylor et al.

*Beneficial associations — Subordinate lodges — Charters — Surrender of charter—Disposition of funds—Act of June 20, 1883.*

1. Moneys raised by subordinate bodies of beneficial and fraternal organizations for sick and funeral benefits belong to the subordinate associations, and are to be distributed to those for whose use and benefit they were contributed.

2. Where the subordinate lodge has surrendered its charter and transferred to the general organization the property held in common, it will not be required to surrender the special trust fund, contributed for the special purpose of the subordinate lodge.

3. Where the general laws of the association provide that the funds of dissolved lodges shall be held in trust by the general association for members of such lodges as shall join a special lodge of protection, the special funds of a dissolved lodge cannot be taken from it if it appears that it is impossible for its members to become members of the lodge of protection.

The Act of June 20, 1883, P. L. 132, considered.

Bill in equity for an account. C. P. Blair Co., Equity Docket, No. 988.

*Webster Grim* and *R. A. Henderson,* for plaintiffs.

*T. H. Greevy* and *J. D. Hicks,* for defendants.

BALDRIGE, P. J., Oct. 31, 1922.—This bill in equity was brought to compel the defendants to account for and deliver certain funds, securities and properties alleged to belong to the plaintiff, which were retained and distributed among the defendants.

### Findings of fact.

1. The plaintiff is the Grand Lodge of the Knights of the Golden Eagle of the State of Pennsylvania.

2. The defendants were members of Altoona Castle No. 145, Knights of the Golden Eagle, and were chartered by the parent organization, the plaintiff herein, on Nov. 25, 1886.

3. The Altoona Castle No. 145, Knights of the Golden Eagle, recognized the plaintiff as the parent lodge until on or about April 9, 1921, when the former was dissolved by the unanimous consent in writing of all its members.

4. On or about June 5, 1920, there was distributed by unanimous consent among the members of the subordinate lodge the sum of $5900. There remained in the treasury approximately $5000 and seventy-five shares of Pennsylvania Railroad stock.

5. The money distributed and the cash and property on hand represents largely the increase in the profit that was made on real estate sold by the subordinate lodge, which was turned into the treasury and mingled with the dues and fines paid from time to time by the members of the lodge.

6. The books, papers and paraphernalia and other property, except the funds, of the subordinate lodge were delivered to the representative of the Grand Chief.

7. The 67th section of the Constitution of the Grand Castle, as revised in 1920, provides as follows: "When a castle is suspended or dissolved, it shall

2 D. & C.

be the duty of its last Noble Chief, or its next officer in rank, to deliver its dispensation or charter, books, badges and jewels, funds and other property to the Grand Chief or his deputy, in compliance with the Act of Assembly of June 20, 1883." The 120th section thereof provides: "All funds and other property received by the Grand Castle from a dissolved, suspended or defunct castle, or the amount received for such property, if sold, shall be held in trust by the Grand Castle for the use of such members of the defunct, dissolved or suspended castle as may, under the provisions of articles 101 to 117, inclusive, entitled 'The Castle of Protection,' become members of the Castle of Protection: Provided, however, that if, for a period of six years, no member of the said defunct, dissolved or suspended castle shall become a member of the Castle of Protection, then the funds so received by the Grand Castle from such defunct, dissolved or suspended castle shall become absolutely the property of the Grand Castle, for the use of the Castle of Protection."

8. Section 101 provides as follows: "The Castle of Protection shall be composed of members of defunct castles under the jurisdiction of the Grand Castle, who, by reason of age, are unable to obtain membership in another castle, and who were in good standing and free from all charges at the time of the dissolution of this castle: Provided, however, that the surrender of the charter or the dissolution of the castle of which they were members has been approved by the executive board. The membership shall consist of beneficial, associate or life members." The 107th section provides: "A member of a defunct castle desiring membership in the Castle of Protection must make application within six months next after the date of dissolution, accompanied by a fee of $5."

*Discussions of the law.*

It is contended that the Altoona Castle No. 145, Knights of the Golden Eagle, was subject to the by-laws and the constitution of the Grand Castle, and that under the Act of June 20, 1883, P. L. 132, the funds collected from dues, assessments and income from other investments belonged to the plaintiff when the defendants dissolved the Altoona Castle.

Section 1 of the act referred to provides: "That the funds and effects of unincorporated associations for benevolent, charitable or beneficial purposes, constituted or organized under any warrant or charter granted by any association recognized or acknowledged as the parent or superior body, where the rules and regulations of such parent or superior body require that, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by such parent or superior body, the moneys, property and effects of such subordinate association shall be delivered and paid to the parent or superior body, are hereby declared to be trust property, and it shall be unlawful for any such subordinate association to divide or distribute the moneys, property or effects, or any part thereof, to and among the members of such subordinate association, or any member thereof, either directly or indirectly, or by way of donation, but all such moneys, property and other effects of such subordinate associations, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by the parent or superior body from which they have obtained the warrant or charter under which they have been constituted or organized, shall be paid and delivered to the proper officers of such parent or superior body, etc."

This act has been interpreted by the Supreme Court in the case of the Order of United American Mechanics *v.* Emery, 219 Pa. 461. The State Council, the plaintiff, made a demand upon the defendant, a former member of a subordinate council, for all the papers, charter, paraphernalia, funds, property,

etc., in their possession and control. The defendant, as here, tendered all the property and effects except the funds. A bill was filed to compel them to account for and pay over the funds to the State Council. The court decided that moneys raised by subordinate bodies of fraternal organizations for sick and funeral benefits, as was the object in this case, belong to the subordinate association and are to be distributed to those for whose use and benefit they were contributed, and cites with approval the principle laid down in Niblack on Benefit Societies, § 129, page 255: "The terms of the laws of the supreme lodge or council of a society providing that, on suspension of one of the local organizations, its property shall be forfeited and vest in the secretary of the supreme body, are void, in that they seek to confiscate without judicial process property held and owned absolutely by the local organization." Justice Potter then says: "Does the Act of June 20, 1883, P. L. 132, change in any way the application of this principle in Pennsylvania? We think not. It does not attempt to divest any property rights, and if it did, it would be unconstitutional. When properly construed, we think it is intended to provide for the disposal of such property as belonged to the subordinate lodge as a whole, and which, in case of dissolution of the association, would belong to no one, as it was held in common by the membership of the local body while in existence. We see no indication that it was intended to reach a special trust fund, contributed for a special local purpose, and for the benefit only of the sick and the families of deceased members of the local council."

The later cases of Kayley v. McCourt, 235 Pa. 304, and Schriner et al. v. Sachs et al., 253 Pa. 611, support this interpretation.

It was contended that the object of the fund was for sick and death benefits, and payments of money among the members must be confined thereto, and, therefore, it was illegal to distribute it among all the members.

This was a trust fund, contributed by the members of the subordinate association for their benefit; it was under their own exclusive control. In no event is the parent organization entitled to the fund, and it is not in a position to question its disposition by unanimous action of the lower body.

It was vigorously argued that the members of the subordinate association would be entitled to derive the benefits of this fund as it would be distributed under the provisions of the Castle of Protection. None of these defendants were eligible to become members of the Castle of Protection, because the dissolution of the subordinate association was not approved by the executive board and no application was made by the defendants to become members within six months, as provided by the laws of the Castle of Protection.

What would be the effect of granting the plaintiff's prayer? The money would eventually be paid to those who did not give a farthing to the fund and those whose contribution and business effort made it, and for whose benefit it was created, would get no part thereof. Such a result was never intended and would be nothing short of confiscation.

The superior organization has complete jurisdiction over the inferior body in regard to organization, management and discipline, but its power does not extend to enforce any forfeiture of property rights or warrant the appropriation of funds in the treasury. See Bacon on Beneficial Societies, § 116.

Mr. Justice Pitney, of the United States Supreme Court, when presiding in the Court of Chancery in New Jersey, held, in the case of National Council, etc., v. State Council, 53 Atl. Repr. 1082, that there is no connection between the members of a subordinate association and the superior body; that the membership of the association is a purely voluntary one, and that a member has the right to withdraw at any time; that dues and taxes cannot be col-

2 D. & C.

lected by compulsion, and that money collected by the subordinate organization is not a trust in favor of the state organization, unless it was collected for the very purpose of meeting the demands of such. Such was not the case here. There is no contention that the money was collected for that purpose. It was for a local purpose and not for the benefit of the superior body.

### Conclusions of law.

1. The defendants had the right to dissolve by unanimous consent without obtaining any permission or authority from the plaintiff.

2. The plaintiff is not entitled to any portion of the funds or stock in the treasury of the subordinate association at the time of the dissolution thereof.

3. The plaintiff does not have the right to attack the legality of the distribution of the funds in the treasury among the members of the subordinate body at the time of its dissolution.

4. The defendant is not entitled to equitable relief.

### Decree of the court.

Now, Oct. 31, 1922, this case came on to be heard, was argued by counsel, and, after due consideration, it is hereby ordered, adjudged and decreed that the injunction be dissolved and the bill be dismissed, at the cost of the plaintiff.

The prothonotary is directed to file this opinion and enter judgment *nisi*, under our Court Rules Nos. 63 and 64, and give notice to the parties or their respective counsel.

From Robert W. Smith, Hollidaysburg, Pa.