SKF Employees Association v. Root et al.

*James L. Price* and *Leonard Michael Propper,* for plaintiff.

*M. H. Goldstein,* for defendants.

MAWHINNEY, J., February 14, 1946.—This matter comes before us on an amended bill in equity filed by the SKF Employes Association by Floyd W. Hill, trustee ad litem, against Stephen Root, Claude Bailey, Joseph Cannon, Charles Worthington, William O'Neill, Kazimier Miller, Board of Ministerial Pensions and Relief of the United Lutheran Church of America. Plaintiff, trustee ad litem, on behalf of the SKF Employees Association, an independent union, alleges that certain defendants as former members and officers of the said SKF Employees Association, have joined a rival union, Local 2898 of the United Steel Workers of America, and have unlawfully taken with them the assets, including money and property, of the association. Plaintiff alleges that he represents the SKF Employees Association and demands an accounting and the return of all assets including the association's books. Defendants contend that the SKF Employees Association has been formally and lawfully affiliated and merged with the United Steel Workers of America, and that an accounting has been made in accordance with the provisions of the constitution and bylaws of the SKF Employees Association.

From the pleadings and the evidence, we make the following

*Findings of fact*

1. SKF Employees Association was formed in 1937. It is an unincorporated labor organization composed of employes of the SKF Industries, Inc.

2. SKF Employees Association is governed by a constitution and by-laws, which provide, inter alia:

Constitution, article III: ". . . Membership of an individual in any other labor union with jurisdiction over employees in similar employment shall, as long as such membership continues, render him ineligible to membership in this association, and shall automatically terminate his membership herein previously acquired."

Constitution, article VI: "Officers. The officers of the association shall be a President, a Vice-President, a Secretary, and a Treasurer, who will, in accordance with the by-laws, perform the various duties and exercise the rights and privileges naturally appertaining to the respective offices to which they are elected. They shall also perform such other duties as may from time to time be assigned to them. The terms of all officers shall be for one year. . . ."

Constitution, article VII: ". . . The Executive Committee shall have the power to appoint and remove all other committees, and its members shall be eligible to serve thereon. They shall have power to fill vacancies among their own number, or among the officers of the association for the period preceding the next regular or special meeting of the members."

Bylaws, article VII. "Officers. (1) President. The President shall be the chief executive officer of the association. He shall preside as chairman at all meetings of the members and of the Executive Committee, unless unavoidably absent.

"(2) Vice President. The Vice-President shall perform the duties of the President in his absence, or in

the event of a vacancy in the office of president. He shall not, however, preside at meetings of the Executive Committee in the absence of the President, unless specially elected as chairman thereof.

"(3) Secretary. It shall be the duty of the Secretary to attend all meetings of the members and of the Executive Committee, to keep minutes of all proceedings thereat, to keep a file of applications for membership, and to keep a file or docket of grievances and complaints. He shall attend to all correspondence of the association subject to the direction of the President and of the Executive Committee, and shall arrange for the posting or forwarding of notices of meetings and other notices. He shall keep on hand at all times a true and correct copy of the Constitution and By-laws of the association, with all amendments thereto, and also a list of all members of the association in good standing as certified to him from time to time by the Membership Committee. It shall be his duty to collect the dues, fines and penalties of the members and remit the same to the Treasurer, and to keep records showing such payments and any delinquencies therein. Finally, it shall be his duty to deliver up to his successor in office all books, records, files, etc., which he holds by virtue of his office.

"(4) Treasurer. It shall be the duty of the Treasurer to receive and deposit all money due to the association, and receipt for the same, and to keep regular and correct accounts thereof and of all investments and re-investments made therewith at the direction of the Executive Committee. He shall render his report as to the condition of the treasury at each regular meeting of the members. He shall give bond promptly following his election to office in such amount as the Executive Committee may prescribe. All accounts of the Treasurer shall be audited once every year either by a committee of members appointed by the Executive

Committee, or else by such independent auditors, as the Executive Committee may appoint, and the report of such auditors shall be submitted to the next regular meeting of members. Finally, upon the expiration of his term of office, he shall deliver up to his successor in office a true and complete account of his administration of the treasury, together with all books, records, and securities appertaining thereto."

Bylaws, article X, as amended: "Beginning January 10, 1938, any member delinquent three or more fiscal months in the payment of dues, shall be adjudged suspended from the membership without the right to vote and shall be eligible for reinstatement only upon the filing of an application for membership, the payment of a reinstatement fee of $2.50 at the time of the filing of the application for membership . . . and in addition thereto all dues in arrears, plus fines, penalties, assessments and/or other indebtedness to the Association."

Bylaws, article I (2) : "Membership in good standing may be terminated by vote of the members of the association at a regular meeting, as hereinafter indicated. . . ."

Bylaws, article VIII: "Any officer of the association and any member of the Executive Committee may be impeached and removed from office by the vote of two thirds of the members of the association at a meeting called for that purpose, after at least thirty days' notice to all members."

Constitution, article V: "Elections. An annual election of officers shall be held at the regular meeting of members in May of each year, and other elections shall be held from time to time as occasion may require to fill vacancies. All such elections, and all elections to determine whether to strike, shall be by secret ballot at a regular or special meeting of members called for the purpose. The voting rights of all members in good standing shall be equal, and all questions shall be de-

termined by the vote of at least a majority of those members present and entitled to vote at the election in question.

Constitution, article VII: "Committees. The executive and administrative powers of the association shall be vested in an Executive Committee of twenty-nine members, four of whom shall be the officers of the association, serving ex officio. The other twenty-five members shall be elected by the appropriate departments in the plant within one week after the annual election of officers. The President of the association shall be chairman of the Executive Committee, which shall meet at least once every month. The Executive Committee shall have power to appoint and remove all other committees, and its members shall be eligible to serve thereon. They shall have power to fill vacancies among their own number, or among the officers of the association for the period preceding the next regular or special meeting of the members. Said committee shall be empowered to call upon all officers and committees for current reports as occasion may require, and shall determine all matters of major policy, subject to the approval of the members of the association. They shall also have power to initiate impeachment proceedings against any officer of the association as the By-laws may provide."

Bylaws, section III: "Elections. (1) The annual election of officers shall take place at the regular meeting in May. The following shall be elected: President, Vice-President, Secretary, Treasurer. Nominations for these offices shall be made on petition of any five members on such form as the Executive Committee may provide, filed with the Secretary at least twenty days prior to said election and posted on bulletin boards accessible to all of the members at least 10 days preceding the meeting. Additional nominations may be received at the regular meeting in May immediately preceding the annual election on request of any twenty-

five members. No person shall be eligible to run for election for more than one office at any election. Printed or typewritten ballots for the first ballot shall be furnished by the Secretary of the association, bearing the names of the persons nominated at the preceding regular meeting. If desired by the Executive Committee, subject to the approval of the members, all of said officers and members of the Executive Committee can be elected on a single ballot. In the event that there are more than three nominees for any office and no one of them secures the majority vote of those present at the meeting, a second ballot shall be called for in which only those three nominees securing the highest number of votes on the first ballot shall be eligible. In the event that no one of said three nominees secures a majority vote on the second ballot, a third ballot shall be called for in which only those two nominees securing the highest number of votes on the second ballot shall be eligible for election.

"(2) In respect to the nomination and election of members of the Executive Committee, the association shall be divided into appropriate departments, each of which shall be entitled to one member on the Executive Committee, who shall be chosen from the members of that department within one week after the annual election of officers. The members of each department shall be entitled to vote only for their own representatives. The members of each department shall vote for one nominee from their department, and those nominees receiving the highest number of votes shall be declared elected.

"(3) Elections to fill vacancies shall be conducted substantially in accordance with the provisions above as to annual elections, except that nominations for such elections shall be made at the meeting at which such elections are held. If a regular meeting of the members is scheduled to take place prior to the next annual election and at least 10 days following the occurrence of

such vacancy, an election to fill such vacancy shall take place at such meeting, and notice thereof shall be given to all members; otherwise the Executive Committee shall have discretion as to whether or not to call a special meeting to fill such vacancy prior to the next annual election.

"(4) Immediately preceding any election, the Chairman shall appoint a judge or judges and a sufficient number of tellers to conduct such election expeditiously. No nominee for office at such election shall be eligible to serve as judge or teller. The judge or judges shall count the vote and shall have power to disqualify and reject any ballots which are not in proper form pursuant to these By-laws. Following their count of the vote, they shall make a formal report of the results thereof to the Chairman, who shall announce the same to the meeting. On request of any twenty-five members, a recount of such ballots may be demanded, and the judge or judges may be required to explain the disqualification or rejection of any ballots. The Chairman shall have final power to determine the validity of any such rejections or disqualifications."

3. That during or about the month of November 1943 plaintiff organization elected to office for one year terms the following officers: Stephen Root, president; Claude Bailey, treasurer; James McMonagle, secretary; and Herbert Clarke, vice-president.

4. That in February 1944 Herbert Clarke left the employ of SKF Industries, Inc., and Claude Bailey, who had been elected treasurer, resigned his position and was appointed to be vice-president by the executive committee, which also appointed Charles Worthington to the vacant position of treasurer.

5. That in May 1944 Claude Bailey resigned his position as vice-president and the executive committee appointed Joseph Cannon to be the vice-president.

6. Stephen Root and Claude Bailey did on various occasions and at regular meetings of the executive com-

mittee of the association during April, May and June 1944, advocate the affiliation and/or merger of the SKF Employees Association with the United Steel Workers of America.

7. That at a regular meeting of the executive committee of the SKF Employees Association held on March 13, 1944, it was determined to hold a special meeting of the joint membership on March 23, 1944, to advise the members of the association's activities and obtain an expression of opinion from them concerning the association. A number of the employes attended the meeting on March 23, 1944, but because of the absence of a quorum, no business was transacted.

8. On April 1, 1944, thirty-nine members of the executive committee of the SKF Employees Association, including the plaintiff Floyd Hill and Stephen E. Youtcheff, signed and presented to the officers of the SKF Employees Association the following petition: "We, the undersigned, duly authorized stewards of the SKF Employees Association, hereby approve a general vote to be taken among our membership as to whether we remain Independent or affiliate with an International Union. This vote to be taken as soon as possible by closed ballot with ballot boxes at our plant gates."

9. Pursuant to the petition mentioned in paragraph 8, the executive committee of the association did cause ballots to be printed, and ballot boxes were placed at the gates of the SKF Industries, Inc., plant on April 6th and 7th. The members of the association were then permitted to vote by ballot. There were then 2,191 members in good standing in the association. The ballots were duly counted by tellers properly appointed from the membership, and revealed the following results:

For affiliation with an international union . . 1,025
To remain "independent" . . . . . . . . . . . . . . . 849
Void ballots . . . . . . . . . . . . . . . . . . . . . . . . . . 23
"No union" . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The results of this balloting were posted upon the bulletin boards at the plant of the SKF Industries, Inc.

The association had for years prior to April 6 and 7, 1944, pursued the practice of obtaining a vote of the membership of the association by a vote conducted within the plant property of SKF Industries, Inc., rather than at a meeting of the membership of the association, and had considered the results of such votes as being binding upon the membership and the officers.

10. The following defendants, Stephen Root, Claude Bailey, Joseph Canon, Charles Worthington, William O'Neill, after April 7th, and during May and June of 1944, applied for membership in the United Steel Workers of America and urged various employes of SKF Industries, Inc., and members of the SKF Employees Association to apply for membership in the United Steel Workers of America.

11. That during the tenure of office of Stephen Root an office was maintained in the Beury Building, Broad Street above Erie Avenue, Philadelphia, Pennsylvania, in the name of SKF Employees Association, which was furnished with fixtures, furniture and equipment purchased with the funds of the SKF Employees Association. This furniture, fixtures and equipment were being retained by the Board of Ministerial Pensions and Relief of the United Lutheran Church in America, which owns and operates the Beury Building, but by agreement between the parties the same was delivered to the other defendants herein pending the outcome of these proceedings.

12. That on June 5, 1945, a special meeting of the executive committee of the SKF Employees Association was held at which a resolution to merge with the United Steel Workers of America was passed by a vote of 20 to 13.

13. That since June 5, 1945, defendants have maintained control and possession of the records and prop-

erty of SKF Employees Association and have turned over to Kazimier Miller, staff representative of the United Steel Workers of America, C. I. O., the funds of SKF Employees Association.

14. During the months of April, May and June, 1944, defendants, who were officers of the SKF Employees Association, advocated affiliating with the United Steel Workers of America, and by June 1944, payment of dues to the SKF Employees Association was not being accepted from the members.

15. Floyd W. Hill, plaintiff, has continued as a member of SKF Employees Association in good standing and has never been suspended for nonpayment of dues.

16. Floyd W. Hill, plaintiff, was elected president of SKF Employees Association at a meeting of the members in January 1945.

17. After application for membership in the United Steel Workers of America in April, May and June, 1944, defendants, who were formerly officers of the SKF Employees Association, discontinued payment of dues to the lawfully continuing SKF Employees Association, represented in this suit by plaintiff as trustee ad litem, and under article X, sec. 1, as amended, of the bylaws of the SKF Employees Association said defendants were automatically "adjudged suspended" from membership after being delinquent for a period of three months.

18. Defendants, former officers of the SKF Employees Association and other former members, received a charter as Local 2898 of the United Steel Workers of America on November 26, 1945.

19. After November 26, 1945, the date of the receipt of the charter of Local 2898, United Steel Workers of America, by defendants, who were former officers of the SKF Employees Association and their associates, the name of SKF Employees Association was never used except by the group represented by plaintiff.

20. Those of the defendants who were former officers and members of the SKF Association, upon receiving the charter for Local 2898 aforesaid, accepted the rules, regulations and laws for local unions adopted by the United Steel Workers of America. The charter of the said Local 2898 provided that the local union shall at all times comply with the rules, regulations and laws for local unions duly adopted by the United Steel Workers of America, affiliated with the Congress of Industrial Organizations.

21. A majority of the members of the SKF Employees Association voted for acceptance of the charter of Local 2898 and those so voting became members of that organization from that date, to wit, November 26, 1944.

22. The constitution of SKF Employees Association never was amended to provide for affiliating or merging with Local 2898, United Steel Workers of America, C. I. O.

23. The action of defendants, who were officers of SKF Employees Association in applying for membership in the United Steel Workers of America, in soliciting other members to apply for membership, and finally in transferring the assets of the SKF Employees Association and formally adopting the charter of Local 2898, was detrimental to the interests of the minority members of the SKF Employees Association and was a threatened injury to the minority members which entitled them to relief at the time of the commencement of this action because of the then threatened harm to their association.

24. The SKF Employees Association has continued in existence and the acceptance by a majority of the former members of SKF Employees Association of the charter of Local 2898, United Steel Workers of America, and the joining of that union by them, did not affect the continued existence of the SKF Employees

Association so long as there are any members in that association.

25. The former members of the SKF Employees Association who joined the United Steel Workers of America were automatically "adjudged suspended" from membership in the former association after being delinquent for a period of three months under article X, sec. 1, as amended, of bylaws of the SKF Employees Association.

26. The former treasurers of SKF Employees Association, Claude Bailey and Charles Worthington, have never, since withdrawing, made a proper accounting to that association of funds received and disbursed by them.

27. Defendants, Stephen Root, Claude Bailey, Joseph Cannon, Charles Worthington and William O'Neill, at the time of the commencement of this action had applied for membership in the United Steel Workers of America, had applied for a charter for Local 2898, and intended to attempt the affiliation or merger of the SKF Employees Association with the United Steel Workers of America, and to take the property of the SKF Employees Association with them, and although no merger has been consummated, said defendants have transferred the property and funds of the SKF Employees Association to Local 2898 of United Steel Workers of America.

## Discussion

The question in dispute is the right to possession of the monies, fixtures and books of the SKF Employees Association, an independent labor union. If, as defendants contend, the SKF Employees Association lawfully affiliated or merged with Local 2898 of United Steel Workers of America, an affiliate of the Congress of Industrial Organizations, plaintiff has no right to the property in question. If, on the other hand, the SKF Employees Association has continued in existence

as such and has not affiliated or merged, then, defendants have no right to the disputed property. Assuming that the SKF Employees Association continued in existence we must further decide whether plaintiff is properly entitled to the relief sought.

First we shall consider the question of the continued existence of the SKF Employees Association. It has long been the settled law that even a majority of the members of an unincorporated association cannot withdraw therefrom and form a new association taking with them the property of the old organization if there be any members who dissent. So, also, neither can an existing unincorporated association by consent of the majority of the members be merged or affiliated with another organization on the pretext that there is no change in the old organization. In Kayley v. McCourt, 235 Pa. 304, the court stated that the applicable rule of law had been laid down previously in Gorman v. O'Connor, 155 Pa. 239. The court, in commenting on the Gorman case at page 309, said:

"There, as here, a majority of the members of a subordinate division of this same order, acting under the supposed authority of a resolution which had been adopted by a majority vote, undertook to carry the division and its property over to another society with which it had sustained no relations whatever, against the will of a minority, who, adhering to the original order, at once reorganized the division, and reëstablished it in its relations with the original order. Two contending divisions resulted, each claiming title to the property that had been acquired before the separation. The court held that neither the majority vote, nor the withdrawal of the majority and their uniting with a division of another body, nor both together, had worked a dissolution of the original division, or divested it of any of its rights or powers; but upon the reorganization by those of the minority, immediate resumption of all its functions followed. The governing consideration

upon which the determination rested, was the continued existence of the division from which the majority had separated. This fixed its legal status as the rightful owner of the property."

That there is no power in the majority of a membership of an unincorporated association to dispose of the property of the association against the wishes of the minority, has long been the law: Washington v. White, 44 Pitts. L. J. 338; Lewis v. Haas, 14 Berks 80; Downing v. Schearer et al., 2 D. & C. 544; Gorman v. O'Connor, 155 Pa. 239; Charles et al. v. Arrington, 110 Pa. Superior Ct. 173; Steinmiller v. McKeon, 21 N. Y. Supp. (2nd) 621; McFadden v. Murphy, 149 Mass. 341.

In Hamilton v. White, 42 Ariz. 170, 22 Pac. (2nd) 1089, a majority of the members of a local lodge passed a resolution withdrawing from the lodge for the purpose of affiliating with another organization. The court said at page 179:

"The passage of the resolution of September 12, 1929, withdrawing Palm Chapter No. 3 from the Grand Chapter of Arizona for the purpose of affiliating it with the Grand Chapter of Texas is the basic fact or transaction out of which this lawsuit has grown, and it occurs to us that if the conclusion of law drawn from this occurrence, namely, that voting for and sponsoring this resolution was in effect a withdrawal by those who did it from membership in Palm Chapter No. 3 of the Grand Chapter of Arizona, is correct, the other conclusions follow naturally. To the defendants and all the members of Palm Chapter No. 3 who desired to continue this chapter as an affiliate of the Sovereign Grand Chapter of Arizona it was such disloyal and seditious conduct as to justify them in so treating it, and under the rule ordinarily applicable to organizations of the character of the Order of Eastern Star this view would seem to be correct. For instance, the substance of the holding in *Gorman v. O'Connor*, 155 Pa. 239, 26 A. 379, as it appears in the syllabus, is:

" 'Where a local division of a benevolent society, by virtue of its constitution and by-laws, is a member of a national organization, a majority present at a meeting of the local division has no power, against the will of the minority present, to renounce allegiance to the national body, and at the same time carry with it the property of the local division, since the secession of the majority deprives it of all property rights in the organization.

" 'The fact that the subsequent proceedings of the minority in continuing the organization may have been irregular, and in violation of the constitution of the national body, does not give the majority, who had seceded, any rights in the property of the local division.' "

Thus the question under the law to be decided is whether the majority members of the SKF Employees Association, in pursuance of resolutions acted upon, by joining the United Steel Workers of America and accepting the constitution and bylaws of that organization, have left the SKF Employees Association, and whether the minority members have continued the existence of that association. We think the answer is clear. The remaining minority members of the SKF Employees Association dissented to and never recognized the attempted affiliation or merger with the United Steel Workers of America. They held meetings, had elections and continued the collection of dues. They have always considered themselves the SKF Employees Association and have continued the use of that name, and have been governed by the same constitution and bylaws that always pertained to the SKF Employees Association. On the other hand, the group represented by defendants have applied for membership in the United Steel Workers of America, solicited membership of others in that organization, and have accepted a charter designated as Local 2898 of the United Steel Workers of America. Upon acceptance of this charter the

members so voting became members of that union and since that date, November 26, 1944, the name SKF Employees Association has not been accepted or used by them. The charter of Local 2898 provides that the local union shall at all times comply with the rules, regulations and laws for local unions duly adopted by the United Steel Workers of America. That the intents and purposes of the constitutions and bylaws of SKF Employees Association and the United Steel Workers of America are about the same is of no consequence. The controlling factor is that Local 2898 is a different organization, it has a different name, and the constitution and bylaws which govern them are those prescribed by the United Steel Workers of America and not those of the SKF Employees Association or those which the members might adopt themselves. Such an attempt as this to affiliate or merge against the consent of minority members is not effective, and the old SKF Employees Association is entitled to its property.

Having decided that the SKF Employees Association is entitled to the property in question, we are next called upon to decide whether the action was properly brought by plaintiff and whether plaintiff is entitled to the relief requested. It is contended by defendants that plaintiff, Floyd W. Hill, is not a proper party in that at the time of bringing the action he was not a member in good standing because he had not paid his dues for a period of three months prior to the commencement of this action. Even assuming this to be true, there is ample evidence that the reason for nonpayment of dues was because of the confusion caused by defendants themselves. It was testified that certain defendants had stated the dues were not being collected and there was no longer in existence an SKF Employees Association. Further, it appears that Floyd W. Hill later did pay all his back dues. Whether Hill was delinquent in his dues is a question between him and the SKF Employees Association. If the association chose to waive

his failure to pay dues, even assuming it to be true, then it is no concern of defendants herein. Further, there were no allegations in the proceedings that Hill was not a member or a proper party plaintiff. Hill had, long before the commencement of this action, been both a member of the SKF Employees Association and a member of the executive committee.. It is not even contended by defendants that he was ever impeached as a member of the executive committee.

The final question to be decided is whether a good cause of action exists upon which relief may be granted. It has been shown that SKF Employees Association is still in existence, it has been shown that Floyd W. Hill is a proper party plaintiff, and it has been shown that the SKF Employees Association is entitled to its property. The only question then is whether at the time of the commencement of this action plaintiff was entitled to relief. We believe relief should be granted. As early as June 5, 1944, the executive committee, by a majority, voted to merge with the United Steel Workers of America pursuant to the constitution, bylaws and regulations of the United Steel Workers of America. The same resolution provided that they would accept a local union charter and that all members of the SKF Employees Association take such steps as were necessary to obtain signatures of the members of the association to membership application cards of United Steel Workers of America. In pursuance of the above resolution, certain of the defendants and others who were formerly members of the SKF Employees Association, began active solicitation of members to join the United Steel Workers of America. On June 6, 1944, at the instance of Stephen Root a notice was posted at SKF Industries announcing the merger of SKF Employees Association with the United Steel Workers of America, and as early as June 12, 1944, the withdrawing officers and members attempted to change the meeting place of the SKF Employees Association, and the officers who had

voted to merge with the Steel Workers Union from that date held their meetings and made their headquarters at the C. I. O. headquarters at 3400 North Front Street, Philadelphia, Pa. At the time of the attempted change of address of the association, the SKF Employees Association's books were also transferred and the funds of the association were in possession of the group of officers advocating the merger with the United Steel Workers Union. The former officers of the SKF Employees Association named as defendants continued to impress the members by their actions that there was a merger of the SKF Employees Association, and on November 26, 1944, upon acceptance of the charter of Local 2898 they contended the merger or affiliation was complete. Since we have already held that SKF Employees Association continued in existence, represented by the group for which Hill is trustee ad litem, we may further find that the majority group which accepted the charter of Local 2898 union, and more specifically defendants who were formerly officers, lost their membership in the SKF Employees Association for nonpayment of dues. Since applying for membership in the United Steel Workers of America, the former officers who are among the defendants have never paid dues to the organization we have held to be the true and continuing SKF Employees Association. Article X, sec. 1, as amended, of the bylaws of the SKF Employees Association provides for the suspension of membership of any person after being delinquent three months. This being true prior to this bill in equity, defendants had no right to the assets of the SKF Employees Association. Again, the cause of action rests not only on a wrong actually committed but on the threatened wrongful action of defendants. Surely, it cannot be contended that plaintiff must sit back and wait until defendants have disbursed the funds unlawfully and then bring this action. As early as June 1944 the proposed unlawful action of the majority of the officers and

members was revealed, and plaintiff is entitled to relief to prevent the consummation of the inevitable consequence of the announced act of the majority. In Downing v. Schearer, 2 D. & C. 544, supra, a single member brought an action against the officers of an unincorporated beneficial lodge to prevent an alleged contemplated division of funds and property of the association. The officers and other members had passed resolutions providing for the surrender of the charter and the continuation of the said organization as an independent association under another name. The court held that plaintiff could maintain the suit, that it did not need to be brought in the name of the association, and that there was no power in the majority of the membership of a beneficial association to dispose of the property against the wishes of the minority, citing Gorman v. O'Connor, 155 Pa. 239, supra, and Kayley v. Mc-Court, 235 Pa. 304, supra. The court in further commenting on the right to bring suit for threatened wrongdoing stated at page 545:

"There can be no question of jurisdiction in this case: see Williams v. District Executive Board, U. M. W. of A., 1 D. & C. 31, and cases there collated. In cases of incorporated societies, it is an established rule that a member cannot sue the officers in a separate action at law for damages sustained by their wrongdoing: Craig v. Gregg, 83 Pa. 19, but may maintain a proceeding in equity to protect the interests of the association: Craig v. Gregg, 83 Pa. 19; Watts' Appeal, 78 Pa. 370; Building Association's Appeal, 83 Pa. 441, and see Kerr v. Trego, 47 Pa. 292. The rule seems to obtain in New York that in such an action, when the alleged illegal act is still in contemplation and not consummated, the plaintiff must first apply to the association to instigate measures of redress, and that the facts of the complaint made to, and the rebuff received from, the association must be set forth in the complaint: Greaves v. Gouge, 69 N. Y. 154—a rule which, under the Penn-

sylvania decisions above cited, does not appear to be recognized in this State, where threatened or consummated wrongdoing on the part of the officers of the association is clearly alleged."

Although it may be that the action of the remaining members of the executive committee on June 12, 1944, did not act as an expulsion of defendants who were then officers, yet the acts of these officers in passing resolutions and attempting to affiliate with another union, in applying for membership in another union, and in taking the property of the SKF Employees Association with them, was such disloyal action as would justify the lawful and remaining members to treat such acts as a withdrawal from the association. See Hamilton v. White, 42 Ariz. 170, 22 Pac. (2nd) 1089, supra.

At a special meeting of the remaining members of SKF Employees Association held in January 1945, Floyd W. Hill was elected president. This election being valid between the association and Hill, defendants cannot contest this election because they do not claim membership in the organization which we have held continued as the SKF Employees Association. We conclude that the SKF Employees Association continued in existence, that the association is entitled to the assets now held by defendants, that a cause of action existed, that Floyd W. Hill is a proper party representing the SKF Employees Association, and that as a member and president of the association he is entitled to receive its assets for the benefit of the other members.

### Conclusions of law

1. The SKF Employees Association, which was organized in 1937, has continued in existence under that name.

2. Members of the SKF Employees Association, represented by plaintiff Floyd W. Hill as trustee ad litem, constitute a group who lawfully continued the SKF Employees Association under that name.

3. The former officers who are defendants herein and the majority of the members of the SKF Employees Association may not, against the will of the minority, no matter how few, affiliate or merge the SKF Employees Association with another organization subject to a new constitution and bylaws under a new name.

4. The former officers of the SKF Employees Association who are defendants herein may not, in attempting to unlawfully affiliate or merge with the United Steel Workers of America, keep possession and transfer to this union funds and property of the legally continuing SKF Employees Association.

5. Plaintiff, Floyd W. Hill, trustee ad litem, was at the time of the commencement of this action a member of the SKF Employees Association.

6. Plaintiff, Floyd W. Hill, trustee ad litem, was elected president of the SKF Employees Association in January 1945.

7. Defendants, Stephen Root, Claude Bailey, Joseph Cannon, Charles Worthington and William O'Neill, were automatically "adjudged suspended" for nonpayment of dues after being delinquent for three months under article X, sec. 1, as amended, of the bylaws of the SKF Employees Association.

8. The former members of the SKF Employees Association who became members of Local 2898 of United Steel Workers of America on November 26, 1944, were automatically "adjudged suspended" after three months from that date for nonpayment of dues to the lawfully continuing SKF Employees Association, and before that date those members who did not pay dues for a period of three months to the lawfully continuing SKF Employees Association were automatically "adjudged suspended".

9. Plaintiff Floyd W. Hill, as trustee ad litem, had a valid cause of action at the time of the commencement of this suit and at all times thereafter.

10. Defendants herein named are unlawfully in possession of the funds, fixtures, property and books of the SKF Employees Association.

11. Plaintiff Floyd W. Hill as trustee ad litem, as a member and as president of the SKF Employees Association, is entitled to the property of the SKF Employees Association now unlawfully held by defendants, and is entitled to an accounting of all funds received and disbursed on behalf of the SKF Employees Association.

12. Defendants shall pay the costs of this proceeding.