FEDERATION OF INSURANCE EMPLOYEES *et al. vs.* UNITED OFFICE AND PROFESSIONAL WORKERS OF AMERICA, C.I.O., *et al.*

JUNE 30, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is a bill in equity praying that the respondent union be enjoined from taking possession of certain property and for other injunctive and incidental relief as to other respondents. The cause was heard before a justice of the superior court on an amended bill, answers, one of which was in the nature of a cross bill, and proof. Thereupon a decree was entered denying and dismissing the amended bill of complaint, vacating the preliminary injunction of May 14, 1947, and directing the respondent bank to deliver certain funds in the manner specified in the decree. From this decree complainants have filed their claim of appeal, and the respondents also have claimed an appeal on the ground that such decree failed to give them the full relief to which they were entitled under the cross bill.

The original complainants were the Industrial Insurance Agents Union, Local No. 36, hereinafter called the Local, and fifteen persons described as its officers and executive board members. The respondents are the United Office

and Professional Workers of America, C.I.O., a national labor organization, hereinafter called the Union, certain of its officers and representatives, and the Industrial Trust Company, referred to as the bank.

An amended bill of complaint was filed by the complainants describing themselves as members and officers of the executive board of the Federation of Insurance Employees, an unincorporated association, formerly known as Industrial Insurance Agents Union, Local No. 36 of the United Office and Professional Workers of America, C.I.O. To this amended bill the Union filed an amended answer in the nature of a cross bill. Two preliminary injunctions were issued prior to the trial. The first, dated May 14, 1947, restrained the bank from paying over certain moneys to the Union and also restrained the other respondents "from taking possession of any monies, papers, books, records or other property now standing in the name of the complainant * * *." The second preliminary injunction, dated June 25, 1947, was issued upon the prayer of the Union and restrained the complainants from delivering any of the property of the Local to any person other than respondent John J. Stanley, secretary-treasurer of the Union.

The evidence discloses that the Union is governed by a constitution which provides for the creation and chartering of local unions by the general executive board thereof. These local unions are subordinate to the national union. Local No. 36 was a local union created and chartered by the national union and was subordinate thereto. On April 22, 1947 the Local and its president were suspended by the president of the Union pursuant to article IV, section 2, of the national constitution, which reads in part as follows: "He shall have the right to suspend the charter of any Local Union that is inactive or for deliberate violation of the Constitution, his decisions to be subject to appeal to the General Executive Board. * * * He shall be free at all times to review the acts and conduct of any officer, organizer or representative of a Local Union whenever in

his judgment this is necessary; where dereliction of duty is revealed by his investigation, he shall have the power to take any action necessary to preserve the interests of the Local Union until the matter can be acted upon by the Local Union Membership."

Among the reasons for the suspension of the Local was its failure to collect and pay over an assessment ordered by the Union and approved by its national convention and a national referendum. Max Shine, president of the Local, was charged with failure to see that such assessment was collected and paid over to the Union. No serious question is raised as to the constitutional power of the Union to levy such assessment and the failure to collect it was admitted by complainants. They also admitted that no appeal to the higher tribunals of the Union, as provided for and authorized by its constitution, was taken from the orders of suspension hereinbefore referred to.

Instead of taking such an appeal complainant Shine called a meeting of the Local, *then in suspension*. This meeting was held on May 9, 1947. Complainants claim that a second meeting was held on the evening of that date, about two minutes after adjournment of the first. Other witnesses testified that a recess was taken during the first meeting and that the alleged second meeting was merely a continuance of the first. The trial justice found that only one meeting was held, but in our view of the law it is immaterial for our present purpose whether one or two meetings were held at that time.

At such meeting or meetings by vote of those present the Local attempted to secede from the Union. Shine testified that the membership of the Local, although fluctuating, was about 400 shortly before the date of this vote; that there were about 150 members present on May 9, 1947; and that the vote to secede at the alleged second meeting was about 97 or 98 to 50. The constitution and by-laws of the Local provide that such by-laws may be amended by a three-fourths vote of the members in good standing

present at a regular meeting or a special meeting called for that purpose. Shine testified that 75 per cent of the members in good standing present at the May 9 meeting did *not* vote for the resolution.

Following this attempt to secede from the Union, the Local and Shine were served with charges and a notice of hearing to be held thereon before the general executive board of the Union. Such notices advised them that hearings upon those charges would be held on certain specified dates to determine whether Shine should be expelled and whether the charter of the Local should be revoked. The complainants failed to appear at those hearings. The general executive board then decided to revoke the charter of the Local and to expel Shine from membership in the Union. These decisions were duly communicated to those affected thereby and no question was raised by the complainants at the trial or in the pleadings with respect to the propriety of the procedure followed in connection with such decisions. It was also stipulated that no appeal was taken to the general membership of the Union from the aforementioned decisions of the general executive board.

The controlling issue presented here is whether the complainants were entitled to the property of the Local upon the suspension and subsequent revocation of its charter by the Union. We are of the opinion that the purported vote of secession taken at the meeting of May 9, 1947 was not legally effective. It is well settled that the membership of an association can only bind it by an appropriate vote taken at a meeting legally convened and lawfully conducted. *Industrial Trust Co.* v. *Green*, 17 R. I. 586.

On May 9, 1947 both Shine and the Local were *under suspension*. Assuming that they could act to bind the Local or the parent organization before this suspension had been lifted, such attempted action of secession was not legally effective because it did not comply with the by-laws of the Local, nor did it secure the approval of the general executive board or the president of the Union, as

required by its constitution. No action was taken by Shine or the Local to exhaust the internal remedies of the organization by appeal or otherwise. The principle of exhaustion of remedies is a fundamental one in the law of unincorporated associations, including labor unions, and until such internal remedies have been exhausted complainants have no right to resort to the court for relief. *Lafond* v. *Deems,* 81 N. Y. 507; *Hickey* v. *Baine,* 195 Mass. 446; *Mixed Local of Hotel and Restaurant Employees Union Local No. 458* v. *Hotel and Restaurant Employees International Alliance, Etc.,* 212 Minn. 587; *Attig* v. *International Brotherhood of Teamsters, Etc.,* 231 Iowa 1; *Harris* v. *Detroit Typographical Union,* 144 Mich. 422.

The law governing such associations appears to be well settled that, even if the attempt to secede was actually successful and effective, the secessionists, although constituting a majority of the members of the Local, cannot take with them the property of the Local, either into a new and independent union or into a subordinate new or existing unit of a rival parent organization. *National Circle, Daughters of Isabella* v. *Hines,* 88 Conn. 676; *Steinmiller* v. *McKeon,* 288 N. Y. 508; *Low* v. *Harris,* 90 F.2d 783; *Schubert Lodge* v. *Schubert Kranken Untersturzen Verein,* 56 N. J. Eq. 78; *Liggett* v. *Koivunen,* 227 Minn. 114; *Tiffany* v. *Mooney,* 263 Mass. 264; *Koerner Lodge, No. 6, K. of P.* v. *Grand Lodge, K. of P. of Indiana,* 146 Ind. 639; *Local No. 2508, Etc.* v. *Cairns,* 197 Wash. 476; *Schriner* v. *Sachs,* 253 Pa. 611. In *National Circle, Daughters of Isabella* v. *Hines, supra,* the court stated: "Neither Loyal Circle No. 7, nor its members, whether a majority or a minority, could divert these funds from the purposes of the trust to another organization."

In support of its contention contrary to the law as laid down in the cases cited above, complainants call our attention to *World Trading Corp.* v. *Kolchin,* 166 N. Y. Misc. 854; *Shipwrights, Joiners & Calkers Ass'n* v. *Mitchell,* 60 Wash. 529; *Textile Workers Union, Etc.* v. *Federal Labor*

*Union, Etc.,* 240 Ala. 239; *International Union, Etc.* v. *Becherer,* 142 N. J. Eq. 561, affirmed, 4 N. J. Super. 456.

Those cases are clearly distinguishable from the instant case in that the facts are wholly dissimilar or the question of law presented was essentially different. In the last-cited case, chiefly relied upon by complainants, the nature of the affiliation was the decisive point upon which the court's decision was based. In *International Union, Etc.* v. *Becherer, supra,* at page 21, the court said that the word "affiliate," as used in the charter of the international union, "is strongly suggestive of a relationship which endures only at the joint will of the larger and smaller bodies, a relationship which is severable *at the will of either.* When such severance or dissolution occurs, the local union withdrawing or expelled, as the case may be, continues its own separate voluntary existence, freed only of an affiliation which *never was more than transient.*" (italics ours)

In the instant case the Local never possessed such autonomy as is referred to in the language quoted above. It was a creature and a constituent part of the parent body, the Union. Its constitution and by-laws provided that all new members should take an obligation to abide by its own by-laws and the constitution of the Union; that any assessment or increase in dues was subject to the approval of the general executive board; and that any member of a Local had the right to appeal from the decision of the Local to the general executive board in accordance with the constitution of the Union.

The constitution and by-laws both of the Local here involved and the Union specifically provide that all the funds and property of the Local shall be held in trust for the benefit of the Local, to be used in accordance with the constitution of the Union, subject to the supervision and direction of the executive board. Implicit in the decision of the trial justice is the finding that the Local was not an "affiliate" in the sense referred to in *International Union, Etc.* v. *Becherer, supra,* but was a creature of the

Union and a subordinate and constitutent part thereof. From our examination of the transcript we cannot say that this finding is clearly wrong.

We are of the opinion that the respondents were not only entitled to the relief provided for in the final decree entered in this cause, but they were also entitled to all other proper assets of the Local held or claimed by the complainants at the date of the attempted secession. The final decree should be amended to provide that *all* property belonging to and in the name of Industrial Insurance Agents Union, Local No. 36, on May 9, 1947 should be turned over to the respondent John J. Stanley, secretary-treasurer of United Office and Professional Workers of America, C.I.O., in his capacity as administrator, for the benefit of Local No. 36, in accordance with the provisions of the constitution of the Union. The decree should expressly provide, however, that no books, records, moneys or other property belonging to the Federation of Insurance Employees on May 9, 1947 or at any time thereafter should be turned over to the respondent John J. Stanley, either individually or in his representative capacity.

Complainants in their brief further in effect claim that if the Federation of Insurance Employees is held not entitled to the funds now held by the respondent bank, then at least the members of Local No. 36 in good standing on May 9, 1947, the date of severance from the Union, are equitably entitled to such funds and that the court should order its disbursement and distribution among such members. In our opinion such issue is not properly before us for decision since the cause was not tried or decided on that theory. Therefore we are not considering or deciding that claim.

The complainants' appeal is denied and dismissed, the respondents' appeal is sustained in part, and on July 10, 1950 the parties may present for our approval a form of decree in accordance with this opinion for entry in the superior court.

ON MOTION FOR REARGUMENT.

OCTOBER 23, 1950.

PER CURIAM. After our decision in the above cause the complainants asked and received permission to file a motion for leave to reargue. Pursuant to this permission they have filed a motion setting out therein certain reasons on which they base their contention that justice requires a reargument of the cause. We have carefully considered those reasons and we are of the opinion that they do not warrant such reargument.

The complainants' motion is denied, and on November 6, 1950 the parties may present to this court a form of decree in accordance with the opinion to be entered in the superior court.

*James J. McAleer, Ambrose W. Carroll,* for complainants.

*Leonard B. Boudin,* of New York Bar, *James E. Flannery,* for certain respondents.