[Civ. No. 20224.   Second Dist., Div. Two.   May 31, 1955.]

MORRIS PIZER et al., Respondents, v. GUS O. BROWN et al., Appellants.

Margolis, McTernan & Branton for Appellants.

Wirin, Rissman & Okrand and Robert R. Rissman for Respondents.

MOORE, P. J.—Respondents sued appellants to enjoin the officers of appellant, independent Union 576, from disbursing and concealing the funds of Local 576, CIO, and to prevent appellants' use of the property of such Local. The International Union is an unincorporated association and a labor

union which exists for the purpose of representing workers in collective bargaining, for establishing wage standards and for improving the economic and social welfare of its members and of working people generally. Local 576 is also an unincorporated voluntary association existing by virtue of a charter issued to it by the International Union. Its purposes are the same as those of the International. Respondents brought the action individually and as officers of the International and as representatives of Local Union 576, United Furniture Workers of America, CIO.

In the latter part of 1949, the Congress of Industrial Organizations (herein called CIO) held a convention in Cleveland, Ohio, where an amendment to their constitution was adopted allowing the CIO Executive Board to expel any International Union "whose policies and activities are consistently directed toward the achievement of the program or the purposes of the Communist Party or other totalitarian movements." In accordance with this new amendment, charges were brought before the executive board of CIO against respondent herein, The United Furniture Workers of America (hereinafter called International) for the purpose of expelling respondent International on the grounds that the International had consistently followed the Communist Party line. Immediately following these charges, the International president, Morris Pizer, publicly announced that he was supporting the CIO policy with the result that the charges by the CIO were deferred until after the forthcoming meeting of the International in June of 1950. After a great deal of debate and inner strife, the International adopted Pizer's resolution endorsing a pro-CIO, anticommunist policy and defeated the opposing resolution that was anti-CIO.

Local Union 576, United Furniture Workers of America, CIO, (herein referred to as Local 576) was chartered by and affiliated with the International. When the national conference of June, 1950, was held, Local 576 sent as its representative to the conference, appellant Gus Brown. He supported and voted for the anti-CIO resolution. The convention delegates voted in favor of the pro-CIO, anticommunist resolution 25,524 to 6,307. Appellant Brown as representative of Local 576 therefore lost. It was assumed by the International that the local unions, as satelites of the International, would abide by the parent organization's decision and remove any Communistic leadership that existed in their respective groups. Such, however, was not the case

here and Local 576 continued to follow the policy that had been banished by the International. When the attitude of the leaders of 576 became generally known, its membership began appreciably to decline numerically. Requests were made to the International to issue a new charter. Finally, the regional CIO director informed respondent Pizer that the CIO had rid itself of Communistic leadership in the California State CIO Council and in the Los Angeles CIO Council, and that it was now up to the International to provide some relief to its own members in Los Angeles. A petition was received by Pizer from certain members of 576 stating that the local was no longer able to give the proper protection to its members; that their bargaining power was sacrificed because the local was too easily atacked on the Communist issue by the employers; that "its officers have appointed shop stewards against the wishes of the members and have prevented the elected shop stewards from functioning." As the danger of losing its membership to the AF of L was imminent, Pizer as president of the International, with the approval and consent of its general executive board, on August 1, 1950, issued a charter to Local 1010, United Furniture Workers of America, in order to preserve the membership of Local 576 to the CIO. This new Local 1010 was chartered for the purpose of absorbing the anticommunist members of Local 576 and preserving their membership to the International. On August 16 the officers of 576 formally established the independent union, also known as 576, herein referred to as "Independent 576." CIO funds of Local 576 were immediately disbursed by the new union as back pay, advance legal fees, prepayments to the accountant, etc. On September 14, 1950, respondents filed the instant action and asked for an injunction to prevent the Independent 576 from disbursing and concealing the funds and from appropriating the name of CIO 576. A preliminary injunction was granted December 26, 1950, substantially complying with plaintiffs' request. Subsequently, the case came to trial resulting in a judgment for plaintiffs. This appeal is from that judgment.

Appellants contend that the trial court erred in finding that there was no breach of contract by the International; that under the local's constitution, the International was obligated to support Local 576; instead of this support, the International attempted to destroy Local 576 by chartering Local 1010 in the same area; that 576 had finally to withdraw from the International to protect itself from destruction al-

though Local 576 actually wished to stay with the International.

Such contention brings us face to face with the principal issue, to wit, whether a group of members of a local union may secede from the parent body and take with it the name, funds, properties and other assets of the original local. It is stipulated by appellants that they violated the constitution in their disaffiliation from the International. They contend, however, that the contract had already been breached by the International's conduct, thus relieving appellants of the obligation to follow the constitution. By reason of such stipulation, a complete interpretation of the constitution is unnecessary. Article XXXIX of the local's constitution, section 2, states that so long as seven members continue their affiliation with the International, all property and funds shall remain with the local. If less than seven members continue their affiliation with the local, all property and funds shall revert to the parent organization. Section 3 states that no funds shall be distributed or divided among the members of the local in contemplation of secession or disaffiliation with the International. Findings 6 and 7 declare that the provisions of article XXXIX were violated.

In a case directly in point, even to the requirement that seven members must remain affiliated for the local to function, it was held that the new independent local was not entitled to the funds or the collective bargaining agreements upon seceeding from its parent organization. (*Morrison* v. *Majestic Laundry System*, 103 N.Y.S.2d 791, 797; see also *Federation of Ins. Emp.* v. *United Office & Professional Workers*, 77 R.I. 210 [74 A.2d 446, 449].) ▇ The law is well settled in this state that the International had a better title to the property of the disbanded union than the newly formed independent even though some of the membership might remain the same. (*Brown* v. *Hook*, 79 Cal.App.2d 781, 795 [180 P.2d 982].)

The trial court found herein that there was no breach of contract on the part of the International, that under the constitution, the individual worker was entitled to be protected from the Communistic influence of the officers of the local; that it was the individual workers of the local to whom the International owed a duty and not the local as such. The preamble of the constitution refers to the wage earners and article III, section 1, reads, "The jurisdiction of the United Furniture Workers of America shall consist of *all workers*

employed in or about the plants." Appellants' authorities are distinguished on their facts. (*Local 1140, U. E. R. & M. Workers* v. *United Electrical, Radio & Machine Workers,* 232 Minn. 217 [45 N.W.2d 408, 23 A.L.R.2d 1197].) In the case at bar, the International was not expelled from the CIO and there was no question about the direct relationship of Local 576 to the CIO. Even if the situation were such as to present the question of affiliation with the CIO through the parent International, appellants' contentions are answered by *Seslar* v. *Union Local 901, Inc.,* 87 F.Supp. 447, 450, which held that the only contact the local has with the CIO is through the International. ■ Respondents' action was reasonable, legal and necessary in protecting its membership from the Communistic influence which, the local's membership felt, was discouraging the acquisition of new members and was, itself, misrepresenting Local 576. It has been held that the Communist party seeks its members especially in the labor unions in which it can compel employers to accept and retain its members. (*Black* v. *Cutter Laboratories,* 43 Cal. 2d 788, 804 [278 P.2d 905].) The trial court was entitled to find from the facts proved that this was the situation which the International was trying to prevent.

■ Appellants contend that the International breached its contract by issuing a new charter to 1010 in the territory of 576. It was proved to be common practice to have more than one local in the same area. Examples were Burlington, Vermont, and Jamestown, Buffalo and New York City. Nowhere do appellants specify the section of the constitution that contains such a provision as would restrict an area to one local. The constitution limited the jurisdiction of 576 to furniture workers but did not forbid the International to grant future charters. The trial court held that the International was justified, not in setting up a rival organization, but in attempting to protect the local's present membership by the means to which it resorted.

■ Appellants contend that the court erred in enjoining the use of the name "576" to the new independent and in preserving the name as property to the International. In *Brown* v. *Hook, supra,* page 796, the court held that the names of the two locals are the same; that the name is the property of the International and that the respondents were entitled to an injunction to protect their right to its exclusive use, because of the "confusion and misleading that must necessarily follow." (*Ibid,* p. 800.)

■ Appellants state, "if there was any doubt in the trial Judge's mind about the financial . . . support given to appellant local . . ." such records should have been produced. It is not for this court to surmise upon the possibility of doubt in the mind of the trial judge. Nowhere does it appear in the record that any such doubt prevailed in the making of the findings. They are positive, clear and concise, indicating no vacillation or uncertainty.

■ Appellants contend that the trial court should have allowed the introduction into evidence of a purported statement of respondent Pizer made in 1948 to the effect that the International was obligated to the local to help it retain its membership. The refusal of the trial court to admit a purported statement made in 1948 under entirely different circumstances and policy could hardly be said to be prejudicial, especially in the light of the finding that one of the main reasons and purposes of the International's action was to preserve the local membership of 576 to the International union and prevent their defection to a rival organization.

Appellants contend that (1) the court erred in ruling as hearsay what was said at the organization of Independent 576 and (2) that it erred in admitting a letter into evidence purportedly signed by appellant Brown. It is not shown how either ruling caused prejudice or influenced the court's determination of the case. In the absence of such showing, this court will not indulge in a lengthy discussion of the trial court's ruling. Although appellants specify numerous alleged errors in the admission and rejection of evidence, "it is considered unnecessary to enumerate them for the reason that error under our law is no longer deemed prejudicial . . ." unless resulting in a miscarriage of justice. (Const. § 4½, art. VI.) ■ The burden rests on the complaining party to show not only error but error which is sufficient to justify a reversal. This the appellants have failed to do. (*Coleman* v. *Farwell*, 206 Cal. 740, 741 [276 P. 335].)

■ Appellants contend that the trial judge committed prejudicial error with respect to the accounting by charging appellants (1) for uncollectable accounts receivable, (2) for refund of wage deductions, (3) for legal retainer, (4) for interest commencing October 6, 1950, and (5) for expenses after August 15, 1950. The basis for these contentions is mainly that the amounts due are unliquidated and therefore uncertain and thus cannot be awarded by the court. In similar circumstances, it was held that although the exact

amounts of indebtedness were not known at the time the complaint was filed, this fact did not render a claim unliquidated. Appellant had the use of the money and it would be unjust and inequitable not to charge him with interest from the time the action was brought. The claims of respondent were capable of being made certain by calculations within the meaning of section 3287, Civil Code. (*Petersen* v. *Lyders*, 139 Cal.App. 307, 309 [33 P.2d 1032].) Furthermore, the only necessity for an accounting was the result of the appellants' failure properly to account for the funds it had converted. (*Meyers* v. *Texas Co.*, 6 Cal.2d 610, 618 [59 P.2d 132].) As it can be ascertained from the record that there is no miscarriage of justice in the accounting rendered, we shall uphold the findings of the trial court. (*Whann* v. *Doell*, 192 Cal. 680, 684 [221 P. 899].)

Respondents' action in all respects has been reasonable, legal and necessary and they did not appear before the trial court with unclean hands.

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied June 16, 1955, and appellants' petition for a hearing by the Supreme Court was denied July 27, 1955.