[Civ. No. 18337. First Dist., Div. Two. July 22, 1959.]

THE PEOPLE ex rel. Department of Public Works, Respondent, v. WILLIAM P. MURRAY et al., Defendants; H. KOCH AND SONS, Appellant.

Morris M. Grupp for Appellant.

Robert E. Reed, Holloway Jones, Jack M. Howard, Norris J. Burke, Roger Anderson and Robert S. Webber for Respondent.

KAUFMAN, P. J.—This action was brought by the state, through its Department of Public Works, to condemn 12.826 acres of land, owned by the appellant, H. Koch and Sons. The land abuts Highway 101 in Marin County. The jury fixed the value of the condemned parcel at $69,000 and found severance damages in the amount of $5,000. This appeal is concerned only with the severance damages. According to the appellant-property owner, the severance damages are grossly inadequate because of errors in evidentiary rulings and instructions. The respondent maintains that the rulings and instructions were correct, and in any event not prejudicial.

The facts are as follows: The appellant owned approximately 62 acres of land located in the city of Corte Madera. A portion of the property abuts the east side of Highway 101 between the Corte Madera Wye and the Alto Wye for a distance of 4,300 feet. Appellant acquired the entire property in 1953 for $67,000. The northern section (approximately 24 acres) of the property consisted of marsh land and the southern section (approximately 38 acres) of hill land. Between 1953-1955, appellant had taken some fill from the hill area and placed it on the marsh land area. In the northwest corner of the property, fronting along Highway 101, appellant had developed a factory building, which with its parking area and roadway occupied about four acres of the total property. The remaining 58 acres were unimproved, vacant land.

The property acquired in this action was a 40-foot wide, 4,300-foot long, strip abutting Highway 101 consisting entirely of slope area off the highway. The northern portion of the strip (about 2,700 feet) was downslope ranging from 3 feet

to 56.5 feet below the grade of the existing highway down to the level marsh land area; the southern portion was upslope, rising sharply above the highway. Of the 12.826 acres acquired by the state, 4.489 was a slope easement already owned by the state. The state also acquired all direct highway access of the appellant's property to Highway 101.

In the before-situation, the only developed access from the appellant's property to the highway was an entrance way in front of the factory. In the before-situation, the property had direct legal access to Highway 101, only for northbound traffic which entered directly from Highway 101 at the above mentioned entrance way. The southbound traffic, however, was prevented from direct access to the property by the dividing barrier down the middle of Highway 101 and had to undertake a circuitous route (for about 2½ miles past the entrance way south, then a U-turn at Alto Wye) in order to enter the northbound lanes of the highway. In leaving the property southbound traffic had to drive north to the Corte Madera Wye and then make a U-turn into the southbound lanes of the highway.

In the after-situation, a paved road was provided as part of the improvement to the northern boundary of the property from a freeway overpass located approximately one-half mile north of the property at the Corte Madera Wye. In the after-situation, the northbound traffic travels an additional one-half mile north to the overpass at the Corte Madera Wye, and returns to the property by the frontage road. The overpass eliminated the necessity of a U-turn for the southbound traffic. The driveway into the factory building was paved out to the existing pavement of Highway 101 under an encroachment permit for the paved area over the shoulder of Highway 101, within the state's existing right of way. The state's expert witnesses testified that because of traffic patterns the access was considerably improved in the after-situation, even though no other means of access existed in the after-situation.* Appellant's witnesses testified that the area acquired by the state was developed for the purpose of providing access roads from Highway 101 to the main body of the property. One of appellant's witnesses testified that the slopes could be developed for a service station site if the land were filled in to make it level with the highway.

---

*The court instructed the jury that the subject property was not benefited by the improvement.

██ . One of the major issues is whether the trial court erroneously instructed the jury as to the extent of appellant's right of access. ██ The general rule, as stated in *Genazzi v. County of Marin,* 88 Cal.App. 545 at 547 [263 P. 825] is as follows:

"Generally speaking, an abutting land owner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right of easement which cannot be damaged or taken from him without due compensation. But an owner is not entitled as against the public, to access to his land at all points in the boundary between it and the highway, although entire access cannot be cut off. If he has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint. (29 C.J., p. 547.)"

*Rose* v. *State,* 19 Cal.2d 713 at 728 [123 P.2d 505], states that the right of access is the right to "reasonable and customary access." ██ In *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818], the court pointed out at 352 that the "easement of access may be said to be that which is reasonably required giving consideration to all the purposes to which the property is adapted." Certain witnesses testified that at certain points along the highway access from the appellant's property would constitute a hazardous entry to the heavy traffic. ██ It is well established that the state may regulate or control such entries if they should prove to be unsafe, and that the police power may even extend to the limitation of a property right if the interest of the general public warrants such action. (*Holman* v. *State,* 97 Cal.App.2d 237 [217 P.2d 448]; *People* v. *Sayig,* 101 Cal.App.2d 890 [226 P.2d 702]; *Holloway* v. *Purcell,* 35 Cal.2d 220 [217 P.2d 665].)

██ The jury was instructed on this matter as follows: "Before these proceedings were commenced, defendant H. Koch & Sons owned the property herein involved facing and adjacent to the easterly side of Highway 101, which ran along said Highway 101 for approximately 4,000 feet. The owners of property facing on property such as Highway 101 have the right of access to and from that highway and have the right to receive light and air from that highway. This right of access is a right to come onto and to leave that property via the highway, and is often referred to as a right of

ingress and egress. Ingress means coming into or entering a piece of property. Egress means leaving or departing from a piece of property. This right of ingress and egress includes the right to have vehicles come from the highway into the property and from the property to the highway, and the right to have pedestrians who are passing the property on foot, or alighting from public or private means of conveyance, using the highway, enter and leave the same. These rights are property rights and belong to the property owners, and if these rights are destroyed or impaired for the benefit of the public, that is a damage for which the property owner is entitled to be reimbursed. It is one element of what is legally called severance damages.

"An abutting owner has the right to a free and convenient use of and access to the highway on which his property abuts. This right of ingress and egress attaches to the land and is a right of property as fully as is the land itself, and any act by which that easement is destroyed or substantially impaired, for the benefit of the public, is a damage to the land itself within the meaning of the Constitutional provision under which the owner is entitled to compensation.

"Although owners of real property abutting upon an existing highway have as an easement or appurtenance to such property the right of access to and from the highway, this does not mean that an owner of abutting property is entitled, as against the public, to access at all points in the boundary between the land and the highway.

"Such owner is entitled only to reasonable and convenient access to his property, considering all the uses to which the property is adapted and available.

"This right of ingress and egress that I have described extends to a use of the street or highway by such means of conveyance and travel as are appropriate to that particular highway and in such a manner as is reasonable and customary.

" . . . . . . . . . . . . .

"When the right of ingress and egress is taken, or is destroyed or impaired, the damage resulting is called 'severance damage.' It is not the only element that is called severance damage, but is included under the heading of severance damage.

"You are instructed that under the facts presented the right of defendant H. Koch and Sons to access to and from Highway 101 along the entire approximately 4000 feet of highway front-

age has been destroyed. It is for you, however, to determine the extent of that impairment in money.

" . . . . . . . . . . . . .

"In determining the amount of severance damage, if any, you may take into account such factors, if you find from the evidence such factors exist, as alteration or reduction in size of the remaining land, of severance of remaining land into an irregularly shaped piece or parcel, or reduction of particularly zoned portion of the property which abuts on the highway, or loss of access from the highway to remaining land not taken, of the change in grade of highway and improvements in relation to land not taken, of the taking or impairment, if any, of the right of visibility from the highway in relation to remaining property; of any re-routing of highway in relation to defendants' undertaken property, as distinguished from re-routing of traffic in relation to highway, the latter of which you may not take into account in determining the amount of severance damage; and you may also take into account in determining the amount of such severance damage the damage resulting to land not taken from the diversion of the highway from direct access to defendants' remaining property.

" . . . . . . . . . . . . .

"Any of the following elements which you may find from the evidence exists in this case, you may consider in determining the severance damage suffered by defendants to the extent that you find such elements, or any of them, reduces the market value of the remaining land by reason of the take of the state and this condemnation of access rights:

"(1) The loss of access rights along that portion of the defendants' property which formerly fronted on Highway 101."

These instructions were a full and correct statement of the law. (See *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799]; *People* v. *Sayig,* 101 Cal.App.2d 890 [226 P.2d 702]; *People* ex rel. *Dept. of Public Works* v. *Schultz Co.,* 123 Cal. App.2d 925 [268 P.2d 117].)

Appellant further argues that the extent of damages for loss of access is a question of law for the court, rather than a question of fact for the jury, and cites *People* v. *Sayig,* 101 Cal.App.2d 890 [226 P.2d 702] and *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799] for the proposition that the trial court must determine whether the right of access has been substantially impaired. In this case, the above quoted

instructions show that the jury was properly instructed that the extent of the impairment is a jury question. (*People* v. *Sayig*, 101 Cal.App.2d 890 at 902 [226 P.2d 702].)

We turn now to appellant's arguments relating to the court's rulings on the testimony of the respondent's expert witnesses. Appellant's witnesses premised their appraisals on the theory that since other access could be developed by means of roads down to the slope sides to the level land, the state should pay for a "substitute road" running along the entire length of the property, at a distance of 3,700 feet from the frontage road connecting the northern boundary of the property. The respondent's witnesses testified that the precipitous hills and downslopes off Highway 101 would make the construction of any such new roads economically unfeasible for developing access other than the most northerly 200 feet of the property, which already had access to the factory building; and that the physical limitations and costs of developing the other roads off Highway 101 precluded direct access from the highway; and that the southerly hill section of appellant's property would have to remain undeveloped for a long time because of its inaccessibility. The witnesses considered however the possibility of the property adjoining appellant's to the south being developed as a residential subdivision and the possibility of new connecting roads at that location.

Appellant argues that it was improper for respondent's expert witnesses, David Cohn and David Simmons, to base their conclusions of value on the assumption that there was a possibility of access being developed at the southern boundary of the property by connecting up to a road developed by the adjacent landowner. There is no merit to this contention. The witness Simmons testified that the southern hilly section of the property was inaccessible for any immediate development and would have to remain undeveloped until the surrounding area of more suitable lands was developed. The witness did, however, consider the reasonable probable development in the future and attached an appropriate value thereto. The witness Cohn testified that the southern section had no economically feasible access except at the northern boundary of the property, and that the southern portion would remain undevelopable until such time as a connection could be made with the adjoining landowner.

The record does not indicate that these witnesses valued the property in conjunction with the adjoining property to the south. Rather, they considered the property separately

and added an increment of value by considering the future possible development. ██ "[W]here the highest and best use of separate parcels will involve their integrated unitary use, such prospective use may be considered in fixing the value of the property taken if a joinder of the parcels is reasonably practicable, and the nature of the case does not preclude the possibility of a union without the exercise of eminent domain." (*People* v. *Ocean Shore Railroad*, 32 Cal.2d 406, 424 [196 P.2d 570, 6 A.L.R.2d 1179]; see also *City of Pasadena* v. *Union Trust Co.*, 138 Cal.App. 21 [31 P.2d 463]; *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708 [275 P. 228]; *City of Stockton* v. *Vote*, 76 Cal.App. 369 [244 P. 609].) Even had they proceeded on a theory of "assemblage," it would not be error as it was within their proper function as expert witnesses. (*People* v. *Dunn*, 46 Cal.2d 639, 642 [297 P.2d 964].)

██ Appellant next argues that the respondent's witnesses should not have been permitted to testify to the fact that there was in existence an encroachment permit issued to the appellant and covering the paved area from the driveway into the factory building, and the area over the shoulder of Highway 101, within the state's right-of-way. The witnesses also testified that an encroachment permit can be required of any abutting property owner who wishes to develop a similar improvement within the state's right-of-way. As was correctly pointed out by the trial court, the fact that there was an existing permit could not be denied. The record also indicates that when appellant vigorously argued this point the trial court invited appropriate instructions on numerous occasions and that appellant submitted these instructions which were then given to the jury.

██ Appellant's next contention of error is that respondent's expert witness, Howell, a real estate appraiser, testified to the listing of comparable property, as under *Central Pacific Ry. Co.* v. *Pearson*, 35 Cal. 247, an offer to sell is not admissible for the purpose of showing value. However, the record indicates that here the testimony was admitted for the very limited purpose of showing the rate of absorption of properties in the area. Furthermore, the issue was a collateral one and could not here constitute ground for reversal. (*Atchison, T. & S. F. Ry. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505 [57 P.2d 575].)

██ The next argument is that the court erroneously

admitted a survey prepared by the witness Simmons as a product of his investigation and·analysis. The survey represented the number of transactions of industrial development in Marin County for 1952-1957, as well as the amount of acreage so utilized in that five-year period. Appellant objected to the exhibit and the latter portion was removed so that the exhibit showed only the rate of absorption of industrial properties. Appellant now argues that this was error because the survey purported to represent all of the industrial transactions in the county whereas it was brought out on trial that there were properties developed industrially during the period of time in question, which were not included in the particular survey. All of the authorities cited by the appellant are not relevant here as they deal with hearsay problems or unfounded documentary evidence. The credibility of the survey was a factual question which was properly left to the jury. ▇ As pointed out in *People* v. *Nahabedian*, 171 Cal.App.2d 302 at 310 [340 P.2d 1053] : "It must be remembered that the facts stated as reasons for the opinion of the witness do not become evidence in the sense that they have independent probative value upon the issue as to market value. On the contrary, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion [citation]."

▇ Appellant also argues that the trial court improperly denied its motion to strike portions of the testimony of respondent's three expert witneses, Simmons, Cohn, and Howell. The first ground for the motion that the witnesses testified that Koch had no right of access· in the before-condition [because the new improvement had'been a freeway since 1941] is not supported by the record. The witnesses testified again and again that the access from the highway to the Koch property was difficult and uneconomical and that therefore the loss of that right resulted in no depreciation of the value of the remaining property. We cannot see how this testimony could possibly have been prejudicial since the court also gave explicit instructions which clearly stated that the 1946 resolution did not give Highway 101 the status of a freeway as far as the appellant was concerned, and that appellant's right of access along its frontage on Highway 101 continued to exist until this suit was filed on November 8, 1955.

▇ The second ground for appellant's motion is that the witnesses considered "[t]hat the uses were limited to the one and only use and no higher." This again was a

matter of the opinion of the witnesses and a question of weight and credibility properly left to the jury.

■ The third ground for appellant's motion to strike was that the witness Howell based his opinion on both zoning ordinances and the minutes dealing with interpretations of zoning ordinances. The ordinances in question were all admitted into evidence. The final ground urged for the motion again related to access rights discussed above.

■ Appellant next argues that the court improperly restricted its cross-examination of the state's witness Cohn, and thus prevented it from impeaching the witness. During the trial, appellant had in its possession Cohn's appraisal report of another and completely separate piece of property prepared for another trial and made before the appraisal of the property in the instant case. The cross-examination was based on the witness' report in preparation for that trial. The witness testified, in part as follows:

"Q. And was that investigation any different from the investigation you made in the Koch property?

"A. It followed somewhat the same line. We had a different condition on the Andler property than on the Koch property.

"Q. The condition was what?

"A. The Andler property was entirely at highway grade.

"Q. The Andler property was entirely at highway grade?

"A. Yes, for the full length of it."

The trial court sustained respondent's objection that the matter was irrelevant and collateral. Appellant relying on *Bingaman* v. *City of Seattle,* 139 Wash. 68 [245 P. 411]; *People* v. *Murata,* 161 Cal.App.2d 369 [326 P.2d 947], and *San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50 [25 P. 977, 11 L.R.A. 604], argues that a witness can be required to answer on cross-examination questions which might be improper on direct examination. However, in the Bingaman case, the similarity between the properties provided the basis for the cross-examination, while the Murata and Neale cases involved former appraisals of the same property. ■ As recently stated in *Sacramento etc. Drainage Dist.* v. *Jarvis,* 51 Cal.2d 799 [336 P.2d 530]:

"The rule is settled that in a condemnation proceeding a witness cannot state his *opinion* of the value of neighboring land.[3] [Citations.] [3However, he may give evidence of the prices paid for similar property in the vicinity of the land condemned.]

"In *Old Colony R. Co.* v. *F. P. Robinson Co.*, 176 Mass. 387 [57 N.E. 670], the rule is stated thus: "The rule has been held very strictly that the opinion of experts as to the value of other lands is not to be received. In *Wyman* v. *Railroad Co.*, 13 Metc. (Mass.) 327, Mr. Justice Dewey uses language as follows: "Evidence of mere opinion as to the value of property is to be confined exclusively to the subject in reference to which damages are claimed. If you would aid the jury by reference to other articles or other property similarly situated, the evidence in reference to such other articles or other property must be that of facts, and not opinions." ' "

Nor under the circumstances here presented can there be an impeachment of the witness. The extent of cross-examination is a matter over which the trial court is given wide discretion, and the only grounds for error are an abuse of that discretion. (*People* v. *LaMacchia*, 41 Cal.2d 738 [264 P.2d 15]; *People* v. *McReynolds*, 31 Cal.App.2d 219 [87 P.2d 734].) We can see no abuse of discretion here.

 The next contention is that the trial court did not permit the examination of the cost of constructing a roadway along the length of the property, parallel to the highway, so that the jury was prevented from considering this as an element of severance damages. The record, however, indicates that the expert witness Cohn testified that such a road could be placed at the cost of $.30 per square foot and that the witness Koch testified that the total cost of such a road would be about $160,000. The latter figure, however, was stricken as improper direct examination. Appellant now argues that even though not admissible on direct such testimony should be admissible on cross-examination. However, the reason for the rule, as explained in *People* v. *Al. G. Smith Co., Ltd.*, 86 Cal.App.2d 308 at 312 and 313 [194 P.2d 750], is that such a collateral fact would add an additional element of damage to the market value prescribed by sections 1248-1249 of the Code of Civil Procedure and the California authorities for arriving at such value. This reasoning is equally persuasive for excluding a collateral fact on cross-examination.

 The next major contention on appeal is that the trial court erred in hearing foundation testimony about comparable sales in chambers. In the leading case of *County of Los Angeles* v. *Faus*, 48 Cal.2d 672, our Supreme Court quoted the following from McCormick on Evidence at page 678 [312 P.2d 680]:

" '. . . These safeguards are the following: The sales of the other tracts must have been sufficiently near in time, and the other land must be located sufficiently near the land to be valued, and must be sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the two tracts are comparable in value and that the price realized for the other land may fairly be considered as shedding light on the value of the land in question. Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion.' "

Appellant cannot now complain of the trial court's careful and conscientious exercise of its broad discretion by first ruling on the matter in chambers.

Appellant's next argument is equally without merit. It argues that the trial court, having ruled on the admissibility of the testimony relating to comparable sales, necessarily found that such sales were indeed comparable. The record shows that the trial court in ruling on the foundation testimony reiterated the fact that the question of weight to be given by the jury to any particular sale was for the jury to determine.

The final contention on appeal is that the court's comment on the testimony of appellant's rebuttal witness, Mr. Adam, was prejudicial error. This rebuttal witness testified that contrary to the earlier testimony by Mr. Simmons he (Adam) had not advised Simmons (as Simmons had testified) as to any estimate of costs of installing utilities on the subject property, the construction of the building on pilings, that Corte Madera was "one of the last outposts of civilization," and various other matters collateral to the main issues at the trial. In surrebuttal, the respondent called Mrs. Mary Simmons who often acted as her husband's secretary and had taken notes of the alleged conversation between her husband and Mr. Adam. Mrs. Simmons, referring to her notes taken at the meeting between Simmons and Adam, established that certain figures and costs had been supplied to Simmons by Adam. The court then recalled Mr. Simmons who corroborated the testimony of his wife. The court then instructed the reporter to prepare a transcript of the testimony of the witness Adam and to supply two photostats of the written statements to be forwarded to the district attorney and the grand jury. Immediately following the trial court admonished the jury as follows:

"THE COURT: I will admonish the jury not to indulge in

any inferences from what the Court has done about certain testimony in this case."

We do not think the statement went beyond the court's privilege to comment on the credibility of witnesses, under section 19 of article VI of the state Constitution. Appellant cites *People* v. *Johnson,* 11 Cal.App.2d 22 [52 P.2d 964], which presented a more aggravated fact situation. ▮ In that case, however, the court held that no reversible error had been committed and cited the applicable rule: " 'But flagrant as misconduct of the trial court in a given case may be, unless it clearly appear that its probable effect was prejudicial to the substantial rights of the party affected by the litigation, and that probably it resulted in a miscarriage of justice because thereof, an appellate tribunal is forbidden to set aside the judgment or to grant a new trial.' " (P. 24.) ▮ Nor has the appellant made the requisite showing of miscarriage of justice due to this incident which was far removed from the central issue of valuation. (Calif. Const., art. VI, § 4½; *Pizer* v. *Brown,* 133 Cal.App.2d 367 [283 P.2d 1055].) Nor, apparently, did appellant so consider it as it did not ask for citation of misconduct or request an admonition to the jury.

We conclude that the judgment is amply supported by the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 16, 1959.