Filed 10/6/21  Hernandez v. K.B. Ins. Co. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERTO HERNANDEZ,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>K.B. INSURANCE CO., LTD.,<br><br>      Intervenor and Appellant. | A158709<br><br><br>(Solano County<br>Super. Ct. No. FCS046123) |

A jury awarded respondent Roberto Hernandez $962,077 in damages against appellant K.B. Insurance Co., Ltd. (KBIC) in this slip-and-fall case. On appeal, KBIC argues that it is entitled to a new trial because the trial court (1) abused its discretion in limiting KBIC's cross-examination of Hernandez and recross-examination of his orthopedic surgery expert; and (2) erred in declining to instruct the jury using the CACI No. 105 insurance instruction.  In the alternative, KBIC argues that the jury verdict was excessive and should have been reduced by $386,000 because insufficient evidence supports the award for future lost wages.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Hernandez sued Golden Dragon Buffet after sustaining injuries to his right knee from a fall at the restaurant in 2014.  After intervening as the responsible insurer, KBIC stipulated to liability, and the parties proceeded to trial in 2019 on the issue of damages.

1

### A. Opening Statements

During her opening statement, Hernandez's counsel described the issue before the jury as the "harms and losses" caused by a quadriceps tendon tear Hernandez suffered from his fall and a subsequent surgery that was only partially successful. She claimed that the 2014 injury "continues to the present day" and "will continue into the future." Counsel noted that since his 2014 injury, Hernandez also tore his meniscus and had surgery on it, but these were "unrelated" to the fall and Hernandez was not seeking medical expenses for that surgery.

In his opening statement, KBIC's attorney told the jury that it would be hearing from its expert that Hernandez had "recuperated" from his 2014 quadriceps tendon tear and that his subsequent medical treatment was "unrelated" to that injury.

### B. Trial Testimony

#### 1. Hernandez

Hernandez testified that he was currently employed as a letter carrier for the U.S. Postal Service. After his fall, he had surgery to reattach his quadriceps tendon. He was off work for five months, but he returned to work because he had "[n]o money" and "no leave left." He testified that the pain in his right knee had continued since the incident in 2014. He had a follow-up MRI in 2017, and he was told that he still had swelling in his knee because the tendon was not completely attached. Hernandez had planned to work until he reached "social security age" in 2023, and his supervisor had allowed him extra time to run routes due to his injury. But he felt he could not physically work for those additional years due to the injury. He stated he had "developed too many problems over the years since this happened" and was "tired" of treating the pain in his knee.

During cross-examination, counsel for KBIC asked Hernandez about when he first started having pain in either knee. Hernandez responded that he had surgery on his *left* knee around 2010. When asked how that injury occurred, Hernandez's counsel objected to the question as beyond the scope of direct. The trial court sustained the objection and noted it was "not relevant either." Counsel for KBIC continued his questioning, and asked: "And then in August of 2018, you had a meniscus cartilage issue that required surgery, right?" Hernandez's counsel objected to the question as beyond the scope of direct, and the trial court sustained the objection.

### 2. Hernandez's Grandson

Hernandez's grandson testified that, since the 2014 incident, Hernandez had stopped doing various household chores and other physical activities. On cross-examination, counsel for KBIC asked if the grandson understood that Hernandez had a meniscus repair surgery after the 2014 incident. The grandson responded that he did.

### 3. Dr. Kofoed

Excerpts of videotaped deposition testimony from Dr. John Kofoed were played for the jury. Dr. Kofoed performed Hernandez's quadriceps tendon surgery in 2014. Dr. Kofoed also reviewed the follow-up MRI in 2017, which indicated there was a tendon tear that suggested "incomplete healing" or separation of the tendon from the knee bone. When asked if Hernandez would need to retire early, Dr. Kofoed responded: "Well, potentially from pain issues that he is currently experiencing. One from the meniscus tear, one from the quadriceps tendon tear. At the time, this may accelerate his need to retire."

3

### 4. *Dr. Barry*

Dr. Piers Barry testified as an orthopedic surgery expert who treated Hernandez from 2017 to 2019. In 2017, Dr. Barry found that Hernandez had "ongoing pain at the site of his quadriceps tendon repair" and ordered an MRI. The MRI showed "either partial re-tear or nonhealing of part of his quadriceps tendon." The MRI also included images of other areas of the knee, which showed "good articular cartilage in a normal meniscus." Dr. Barry testified that when Hernandez is "in the more active part of his work, it seems to really trigger pain symptoms in his knee" and that if Hernandez weren't doing that, he would have less pain.

During redirect, Dr. Barry testified that the swelling in Hernandez's knee seems to be "directly related" to his quadriceps tendon tear. On recross, counsel for KBIC asked Dr. Barry whether a torn meniscus can cause swelling. Dr. Barry responded: "If you have a currently torn meniscus, that could certainly cause swelling." Counsel for KBIC then asked: "And after it's been repaired, a result of ongoing issues regarding the meniscus can be swelling too, can it not?" Dr. Barry responded: "I don't believe there was a meniscal repair." As KBIC's counsel began to repeat that answer, Hernandez's counsel objected as beyond the scope of redirect. The trial court sustained the objection.

### 5. *Dr. Peatman*

KBIC's orthopedic surgery expert Dr. Thomas Peatman testified that he personally examined Hernandez in 2018, two months before Hernandez had surgery to repair a medial meniscus tear. The tear did not appear on the MRI from 2017. Dr. Peatman concluded that the 2018 meniscus surgery was unrelated to the 2014 fall, and that the "most likely cause" of Hernandez's

4

current pain and swelling in the knee was "the medial compartment arthritis that had a meniscus tear."

### 6. *Economic Consultant Ines*

Economic consultant Laura Ines testified regarding the calculation of damages for Hernandez, including future wage losses if Hernandez was unable to continue working due to the 2014 injury. She calculated those future wage losses to range from $127,000 (if Hernandez retired one year early) to $519,000 (if Hernandez retired four years early). Ines used Hernandez's current $65,766 annual salary, the average overtime he had worked since his injury, and other factors like inflationary growth in making these calculations.

### C. *Jury Instructions*

At a hearing to discuss preliminary jury instructions, counsel for KBIC argued that the standard CACI No. 105 instruction[1] should be provided to the jury because KBIC would be identified as "KB Insurance Company" during the trial. The trial court denied the request, reasoning that the instruction was inappropriate because it related to liability insurance, but invited KBIC to draft a special instruction to address its concerns. At a hearing to discuss closing jury instructions, KBIC's counsel stated that it had declined to draft a special instruction, but now requested CACI No. 5001 be provided. Hernandez's counsel proposed the following modified instruction: "You must not consider whether the Defendant has liability insurance, or whether the Plaintiff has health insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and the

---

[1] The standard CACI No. 105 instruction reads: "You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and the evidence."

5

evidence." KBIC's counsel responded: "I think it's an excellent suggestion." The trial court noted the stipulation of the parties, and subsequently provided the modified instruction to the jury.

### D. *Verdict, Judgment, and Post-Trial Motions*

The jury awarded Hernandez $962,077 in total damages, including $386,000 in future lost earnings and $212,440 in future medical care. Judgment was entered in accordance with the verdict.

KBIC subsequently filed a motion for a new trial on several grounds, including that (1) the trial court improperly sustained objections to cross-examination questions about Hernandez's meniscus repair surgery as beyond the scope of direct; (2) the trial court erroneously refused to instruct the jury using the standard CACI No. 105 instruction; and (3) the jury's verdict was excessive and must be reduced by $598,440 because there was an inadequate foundation for the damages awarded for future lost wages and future medical care. KBIC also filed a motion for judgment notwithstanding the verdict (JNOV), arguing that the evidence was insufficient to support the future lost wages and future medical care awards. The trial court denied both motions.

## II. DISCUSSION

### A. *The Trial Court Did Not Prejudicially Abuse Its Direction in Sustaining the Evidentiary Objections*

KBIC argues that it is entitled to a new trial because the court abused its discretion in sustaining objections to its cross-examination of Hernandez and recross-examination of Dr. Barry regarding the 2018 meniscus surgery, unduly restricting KBIC's right to confrontation.

Cross-examination is generally limited to the scope of direct examination, and recross-examination is similarly limited to the scope of redirect. (Evid. Code §§ 762, 773, subd. (a); *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 146.) "The extent of cross-

6

examination is a matter over which the trial court is given wide discretion, and the only grounds for error are an abuse of that discretion." (*People By and Through Department of Public Works v. Murray* (1959) 172 Cal.App.2d 219, 232.)

Here, KBIC's counsel attempted to ask Hernandez on cross-examination whether he had meniscus surgery in 2018. Hernandez had testified on direct regarding his 2014 injury, subsequent quadriceps tendon surgery, and continuing knee pain, but not about the meniscus surgery. Similarly, KBIC's counsel attempted to question Dr. Barry about the meniscus surgery during recross-examination. Dr. Barry had testified on redirect regarding Hernandez's quadriceps tendon and the relationship between his 2014 injury and current symptoms, but not about the meniscus surgery.

Given the clear relevancy of the meniscus surgery to Hernandez's claims of injury, we question whether it was proper for the trial court to disallow KBIC's efforts to inquire into it during these cross- and recross-examinations. But even if the court abused its discretion in disallowing the testimony, no prejudice resulted from the rulings. (*People v. Sully* (1991) 53 Cal.3d 1195, 1220 [abuse of discretion in refusing cross-examination is subject to harmless error analysis, based on factors such as the importance of witness' testimony, presence or absence of other evidence corroborating or contradicting testimony, and overall strength of case].) KBIC argues that it was unduly prejudiced because Dr. Barry's testified that he did not "believe there was a meniscal repair," and this left the jury with "the entirely false impression that there was doubt as to whether a medial meniscus tear surgery *had ever taken place at all*." But plenty of comments and evidence were presented about the meniscus surgery, and its occurrence could not

7

seriously have been in doubt.  Hernandez's counsel mentioned during opening statements that Hernandez had meniscus repair surgery after his 2014 injury.  And witnesses testified about the meniscus surgery, including Hernandez's grandson and Dr. Peatman.  Indeed, Dr. Peatman testified about the surgery at length, and his conclusion that the meniscus was the "most likely cause" of Hernandez's current knee pain.  In short, KBIC had ample opportunity to present evidence establishing Hernandez's meniscus surgery and did so.

The trial court did not prejudicially abuse its discretion in sustaining the objections.

### B.  The Trial Court Did Not Err in Declining to Provide the CACI No. 105 Instruction

KBIC also argues that it is entitled to a new trial because, while it agreed to a modified version of CACI No. 5001 in the *closing* jury instructions, the jury was "tainted" from the outset when the trial court refused to give CACI No. 105 in the *preliminary* instructions.  We are again not persuaded.

We review claims of instructional error de novo.  (*Ted Jacob Engineering Group, Inc. v. Ratcliff Architects* (2010) 187 Cal.App.4th 945, 961.)  "It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v. Burgener* (1986) 41 Cal.3d 505, 538.)

The modified instruction provided here included all three elements of the standard CACI No. 105 instruction:  (1) the jury must not consider whether the parties had insurance; (2) the presence or absence of insurance was totally irrelevant; and (3) the jury must decide the case based only on the law and the evidence.  KBIC offers no authority for its position that timing of

8

the instruction "forever tainted" the case, and we must presume the jury followed their instruction in the absence of contrary evidence. (*People v. Harris* (2005) 37 Cal.4th 310, 350.) We conclude there was no instructional error.

### C. Substantial Evidence Supports the Verdict on Future Lost Wages

While KBIC maintains that it is entitled to a new trial, it argues in the alternative that the jury verdict was excessive and should have been reduced by $386,000 because there was insufficient evidence supporting the award for future lost wages. Specifically, KBIC contends that the evidence regarding Hernandez's need to retire due to his knee pain was "speculative." Once again, we are not persuaded.

"We review the jury's damages award for substantial evidence, giving due deference to the jury's verdict." (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 300.) The amount of damages is a fact question "first committed to the discretion of the jury." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506 (*Seffert*).) "They see and hear the witnesses and frequently, as in this case, see the injury and the impairment that has resulted therefrom." (*Id.* at pp. 506–507.) Accordingly, the appellate court "can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury." (*Id.* at p. 507.)

"Whatever its measure in a given case, it is fundamental that 'damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.' " (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989.) "However, recovery is allowed if claimed benefits

9

are reasonably certain to have been realized but for the wrongful act of the opposing party." (*Ibid.*)

The evidence presented here was not too speculative to support the lost wages award. Hernandez testified that the pain in his knee had continued since the incident in 2014. While he had planned to work until 2023 when he reached "social security age," he testified that he could not physically work for those additional years due to the injury. That testimony, in turn, was supported by Dr. Kofoed's testimony that Hernandez's knee pain "may accelerate his need to retire."

Moreover, Ines calculated Hernandez's future wage losses based on his annual salary at the time of trial and average overtime he had worked since his injury. She presented a range of losses from $127,000 to $519,000, based on whether Hernandez would retire one to four years earlier than he expected. The jury's $386,000 award fell in the middle of that range. For these reasons, we cannot say that the award of future lost wages shocked the conscience. (*Seffert, supra,* 56 Cal.2d at pp. 506–507.)

## DISPOSITION

The judgment and order denying the motions for new trial and JNOV are affirmed. Respondent shall recover his costs on appeal.

_____
Humes, P.J.

WE CONCUR:


_____
Banke, J.


_____
Sanchez, J.


*Hernandez v. K.B. Insurance Co., LTD.*  A158709

11